REMINGTON ARMS COMPANY,
a Corporation of the State of
Delaware, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Corporation of the Commonwealth of Massachusetts, Defendants.

Civ. A. No. 89–420–JLL.

United States District Court,
D. Delaware.

April 24, 1992.

---

See also 748 F.Supp. 1057.

Richard D. Allen, Donald E. Reid, Luke W. Mette, and Karen A. Jacobs of Morris,

Nichols, Arsht & Tunnell, Wilmington, Del., and Joanne B. Grossman and William F. Greaney of Covington & Burling, Washington, D.C., of counsel, for plaintiff Remington Arms Co.

Lawrence S. Drexler of Elzufon, Austin & Drexler, Wilmington, Del., and John C. Sullivan, Richard S. Mannella and Stephen F. Brock of Manta and Welge, Philadelphia, Pa., of counsel, for defendant Liberty Mut. Ins. Co.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Defendant Liberty Mutual Insurance Company ("Liberty Mutual") has brought this motion to compel documents that the plaintiff, Remington Arms Company ("Remington"), claims are not subject to discovery because of the attorney-client privilege or the work product doctrine. The documents purportedly relate to underlying claims against Remington for environmental damage from three sites in Connecticut in September of 1988. Remington notified Liberty Mutual of its claim that the insurance company had a contractual obligation to defend and indemnify Remington under various primary and excess liability insurance policies issued to Remington over the past 60 years. When Liberty Mutual failed to commit itself to coverage, Remington brought this action. Docket Item ("D.I.") 232 at 1; D.I. 259 at 1.

The discovery process has been an immense undertaking, resulting in the exchange of tens of thousands of documents. D.I. 259 at 5. During this process Reming-ton has withheld numerous documents on the grounds they were protected by the attorney-client privilege or work product doctrine. *See, e.g.,* D.I. 264 at Exhibit ("Ex.") 21. At various times, Liberty Mutual protested these assertions. *See, e.g., id.* at Ex. 19 & Ex. 20. After revising its list of protected documents ("Revised Privilege Log"), Remington forwarded its Revised Privilege Log to Liberty Mutual on September 25, 1991. D.I. 259 at Ex. 5; *see also* D.I. 233 at Ex. 3. Liberty Mutual provided notice of a motion to compel the production of the documents on February 6, 1992. D.I. 231.

At issue before the Court is the question whether the documents designated as protected by the attorney-client privilege or the work product doctrine are discoverable even assuming that they constitute privileged or protected material in the underlying actions.[1] Liberty Mutual contends that Remington cannot protect the documents in its Revised Privilege Log from disclosure because (1) Remington has placed the underlying claims at issue by seeking coverage from Liberty Mutual; (2) Remington is contractually obligated to cooperate with Liberty Mutual with respect to the underlying claims; and (3) Remington and Liberty Mutual share a common interest in the defense of underlying claims. Remington disputes all of Liberty Mutual's contentions, and each party has cited some authority in support of its position. The Court will approach the issue mindful of the applicable law, the weight of applicable authority, and the policies that give form to the scope of the protections from disclosure.

---

1. *Liberty Mutual has stated in its initial brief:* Liberty Mutual contends that Remington continues to withhold documents to which the attorney-client privilege and work product doctrine do not apply, even with respect to any underlying claims, and Liberty Mutual does not waive its right to seek production of such documents. However, for purposes of this motion, Liberty Mutual does not contest Remington's assertion that the documents listed in its Revised Privileged Log are privileged or work product with respect to the underlying claimants.

Docket Item ("D.I.") 232 at 11–12 n. 11. This statement restricts the Court's analysis in ruling on this motion. Liberty Mutual has argued that, whether or not Remington can establish the elements in the underlying claims, the privileges do not apply in this action. The Court limits this decision to the question of whether *the claims of the attorney-client privilege and* work product doctrine categorically cannot apply in this action.

## II. ATTORNEY–CLIENT PRIVILEGE

### A. *Choice Of Law*

The first question that the Court must address is the law that applies to Remington's assertion of attorney-client privilege. Under Rule 501 of the Federal Rules of Evidence:

[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The parties have stipulated that the substantive law of Connecticut shall govern the action. D.I. 275. Pursuant to Rule 501 Connecticut law governs the question of attorney-client privilege.

■■■■ The Connecticut Supreme Court has adopted general common law principles regarding the attorney-client privilege as stated by Wigmore. *McWilliams v. American Fidelity Co.*, 140 Conn. 572, 102 A.2d 345, 349 (1954). Under these principles

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

8 Wigmore, *Evidence* § 2292 at 554 (McNaughton rev.1961). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Evidentiary privileges necessarily impinge on the production of relevant evidence and should therefore not be expansively construed. *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Nevertheless, they serve important values in the observance of law and the administration of justice and

cannot be disregarded lightly. *See Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682.

■■■■ In deciding Connecticut law, the Court must predict the manner in which the Connecticut Supreme Court would decide the issue. *Wilson v. Asten–Hill Mfg. Co.*, 791 F.2d 30, 32 (3d Cir.1986). In this process the Court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court would decide the issue." *Zamboni v. Stamler*, 847 F.2d 73, 80 (3d Cir.), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988). If the highest court of the state has not spoken on the issue, the decisions of lower courts of that state are entitled to special consideration. "Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest court would rule otherwise." *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985); *see also Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir.1991) ("An intermediate appellate court ... is datum for ascertaining state law which is not to be disregarded unless it is convinced by other persuasive data that the highest court of the state would rule otherwise."); *Aetna Casualty & Surety Co. v. Farrell*, 855 F.2d 146, 148 (3d Cir.1988) ("In the absence of an authoritative pronouncement by a state's highest court, we may give serious consideration to the opinion of an intermediate appellate court."); *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987) ("[W]e accept decisions of Pennsylvania's intermediate courts as presumptive evidence of Pennsylvania law.").

### B. *Implied Waiver Of Attorney–Client Privilege Under The "At Issue" Doctrine*

■■■ Liberty Mutual argues that Remington has waived its attorney-client privilege in the underlying actions by putting its knowledge and conduct "at issue" by seeking insurance coverage in this action. The

doctrine stems from traditional notions of waiver. By taking an action that places privileged information "at issue" the party may forfeit the privilege. The general pronouncements of the Connecticut Supreme Court regarding the attorney-client privilege give little guidance to the scope of such a waiver doctrine and its application here.

Some indication of Connecticut law emerges from the lower courts on this particular issue. A lower court in Connecticut has addressed the waiver issue in an insurance case. The court in *Reichhold Chemicals v. Hartford Accident & Indemnity Co.* refused to follow the theory advanced by Liberty Mutual and rejected the cases on which it relies. CV–88–0351982 (Conn.Super.Ct. Feb. 1, 1991) (D.I. 233 at Ex. 15). The court ruled that application of attorney-client privilege could not be categorically precluded, stating:

> Because a plaintiff puts a question "at issue" which would normally be, as in this case, creating a divergence of claims between the parties who would normally be on the same side, does not in itself mean that the plaintiff has to give up, blanket-wise, all of the privileges that have been bestowed upon attorneys by our law. As far as I can see, there's nothing in Connecticut law that even has created any question as to our acceptance of these doctrines that have been enumerated by these other cases[.]

*Id.*, bench op. at 59–60. This case clearly states the court's understanding of Con-

necticut law, and Liberty Mutual's attempts to distinguish its application with minor factual distinctions are unavailing. The *Reichhold* court made a decision as to whether the "at issue" doctrine applied and reserved the right to determine whether or not the attorney-client privilege would apply to specific documents. In another Connecticut decision, a trial court stated in dicta that it was not inclined to adopt the "at issue" doctrine with respect to the attorney-client privilege.[2] *Carrier Corp. v. Travelers Indemnity Co.*, CV88–352838, bench op. at 4 (Conn.Super.Ct. Sept. 11, 1991) (D.I. 260 at Ex. B).

Liberty Mutual argues that the Connecticut Supreme Court would not choose to follow lower court decisions and would follow precedent of other state courts because of their weight and persuasiveness.[3] The "at issue" doctrine stems from traditional notions of implied waiver. In order to determine the legitimate limits of implied waivers, it is necessary to examine the reason to have such a doctrine.

> [P]lacing-at-issue waiver can be justified as an application of the "anticipatory waiver" principle: an allegation, like a pre-trial disclosure, merely anticipates a waiver that will occur at trial. When the party asserting the privilege bears the burden of proof on an issue and can meet that burden only by introducing evidence of a privileged nature, waiver is clearly warranted at the discovery stage.

*Developments–Privileged Communications*, 98 Harv.L.Rev. 1450, 1639 (1985).

---

2. The statements of the court constitute dicta because the court failed to "foreclos[e] the issue" by making a definitive ruling. *Carrier Corp. v. Travelers Indemnity Co.*, CV88–352838, bench op. at 4 (Conn.Super.Ct. Sept. 11, 1991) (D.I. 260 at Ex. B).

3. Several recent decisions of other state courts seem to support that position. Lower courts in Delaware have found that a plaintiff seeking insurance coverage for underlying claims waives attorney-client privilege as to documents relevant to their conduct and the conduct of their counsel in those actions. *See E.I. duPont de Nemours & Co. v. Admiral Ins. Co.*, C.A. No. 89C–AU–99, Rubenstein, SDM (Del.Super.Ct. Feb. 18, 1991); *North Am. Philips Corp. v. Aetna Casualty & Surety Co.*, No. 88C–JA–155, Rubenstein, SDM (Del.Super.Ct. May 2, 1991) (D.I. 233 at Ex. 11); *Monsanto Co. v. Aetna Casualty & Surety Co.*, No. 88C–JA–118, Rubenstein, SDM (May 25, 1990), *aff'd*, 1990 WL 200482 (Del.Super.Ct. Nov. 20, 1990) (Poppiti, J.) (D.I. 233 at Ex. 12). *But see Playtex, Inc. v. Columbia Casualty Co.*, No. 88C–MR–233, Faw, SDM (Del.Super.Ct. Oct. 4, 1991) (D.I. 233 at Ex. 13). Similarly, a New Jersey trial court supports this line of analysis. *SCM Corp. v. Lumbermans' Mutual Casualty Co. (In re Environmental Ins. Declaratory Judgment Actions)*, Docket Nos. L–8573–89, L–96187–87 (N.J.Super.Ct., Law Div. Sept. 20, 1990) (D.I. 233 at Ex. 14). A few federal district courts have also appeared to adopt similar reasoning. *See, e.g., Potomac Elec. Power Co. v. California Union Ins. Co.*, 136 F.R.D. 1, 4 (D.D.C. 1990).

This rationale is reflected by the traditional rule for implied waiver: "It seems that when a party seeks relief in a court of law, he must be held to have waived any privilege, which he otherwise might have had, to withhold testimony required by the rules of pleading or evidence as a basis for such relief." *Independent Productions Corp. v. Loew's, Inc.*, 22 F.R.D. 266, 277 (S.D.N.Y.1958) (quoting *Fleming v. Bernardi*, 1 F.R.D. 624, 625 (N.D.Ohio 1941)). The language that some jurisdictions employ in their test for implied waiver reflects the traditional test. *See, e.g., Home Ins. Co. v. Advance Machine Co.*, 443 So.2d 165, 168 (Fla.Dist.Ct.App.1983) (relying on test stated in *Savino v. Luciano*, 92 So.2d 817, 819 (Fla.1957) to reject the contention that injecting reasonableness of settlement waived privilege). A related rationale for finding a waiver in this area is that the selective use of privileged information by one side may "garble" the truth, as Learned Hand put it. *See United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir.1942), *cert. dismissed as moot*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943) (speaking in terms of the fifth amendment). Where a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture. *See generally* Richard L. Marcus, *The Perils of the Privilege: Waiver and the Litigator*, 84 Mich.L.Rev. 1605 (1986); *Developments–Privileged Communications, supra,* at 1633–37.

Courts' statements of what constituted issue injection began to become more liberal and often came to resemble a general balancing test with reliance on *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975).[4] Expansive applications of implied waivers, however, have led to substantial academic criticism, which courts upon mature reflection have begun to adopt. The core problem, according to this line of reasoning, is that expansive language for determining implied waiver leads to a type of ad hoc determination that ignores the system-wide role of the attorney-client privilege and undermines any confidence that parties can place in that privilege. *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 311–12 (N.D.Cal.1987); Marcus, *supra,* at 1628–33, 1648–53; Davidson and Voth, *Waiver of the Attorney–Client Privilege,* 64 Oregon L.Rev. 637, 646–50 (1986); *Developments in the Law–Privileged Communications, supra,* at 1637–43. These authorities contend that extremely liberal waiver rules increase litigation costs and judicial time spent on discovery disputes, favor the wealthiest litigants, undermine the values served by the privilege rules, and vary according to the identity of the litigants and their purported need for privileged information. *See Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1145–46 (La.1987); Marcus, *supra,* at 1628–33, Davidson and Voth, *supra,* at 640, 646–50 (1986); *Developments*

---

**4.** Numerous courts have used language originating in *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975). *See, e.g., Conkling v. Turner,* 883 F.2d 431, 434 (5th Cir.1989) (citing cases). A party is treated as having waived its privileges if:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn,* 68 F.R.D. at 581. Courts praised the *Hearn* court for adding a discretionary element. This element supposedly would be less harsh and rigid and more protective of attorney-client privilege than the traditional or automatic waiver rule. *Greater Newburyport Clamshell Alliance v. Public Serv. Co.,* 838 F.2d 13, 20 (1st Cir.1988); *Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1579–80 (Fed.Cir.1985). In actuality, however, the *Hearn* language often provided much less protection for the privilege in application, because many understood the decision to mean that the important protected information is "at issue" and "vital" wherever it contains information relevant to the case. Some problems may stem from the loose manner in which the *Hearn* court originally stated its holding. Some of the decision's other language undermines an expansive reading of its holding. *See infra* note 6. In addition, with regards to the facts in the case, one court noted, "The actual holding in [*Hearn*] is not in point because the party there asserting the privilege had expressly relied upon the advice of counsel as a defense to the plaintiff's action." *Connell v. Bernstein–Macaulay, Inc.,* 407 F.Supp. 420, 422 (S.D.N.Y.1976).

*in the Law—Privileged Communications, supra,* at 1637–43.

In addition to the system-wide problems, the fairness to individual litigants and the intent demonstrated by a particular act is unclear in the broadest applications of implied waiver.[5] Davidson and Voth, *supra,* at 640. Fairness concerns should focus on how a party plans to prove the elements of its case, not whether the ability to claim the privilege seems fair to a court in a particular case. Marcus, *supra,* at 1630. Courts have generally rejected the idea that a party waives the attorney-client privilege by bringing a suit. *See, e.g., Zenith Radio Corp. v. United States,* 764 F.2d 1577, 1580 (Fed.Cir.1985); *Barr Marine Products, Inc. v. Borg–Warner Corp.,* 84 F.R.D. 631, 635 (E.D.Pa.1979); *In re Carter,* 62 B.R. 1007, 1014 (Bankr.C.D.Cal. 1986). Contending that parties seeking relief voluntarily relinquish their attorney-client privilege overstates the intention of the party's action. The party would be forced to forsake a claim or reveal its privileged information. This "choice" unfairly implies an intent to waive upon the insured. A better explanation is that an unlimited doctrine of waiver reflects a hostile attitude toward the existence of attorney-client privilege. *See Connell v. Bernstein–Macaulay, Inc.,* 407 F.Supp. 420, 422 (S.D.N.Y.1976) ("[I]f the mere bringing of a lawsuit waived the privilege, it would have little meaningful existence."); *McCormack on Evidence* § 97 n. 5 (Supp.1987) ("Scattered case authority suggests that the privilege may be waived by institution of certain types of claims or assertion of certain defenses. Such decisions would appear to verge close to acceptance of the Benthamite view of the privilege [as an unnecessary obstacle], and at present may be classed as aberrational.").

The logic of implying waivers has its limits. Remington proposes two situations where the "at issue" doctrine applies. The first application, where a party injects the contents of a privileged communication into the litigation, directly speaks to the central concern over "truth-garbling." For instance, where a party relies on legal advice to satisfy the elements of a claim or defense, this principle applies. Since the party is injecting part of the confidential communication into the litigation, the attorney-client privilege should not protect examination of the privileged communication. Some commentators suggest restricting the doctrine to this category. *See* Davidson and Voth, *supra,* at 649; Marcus, *supra,* at 1633. By claiming that its attorney's fees or actions in the underlying litigation were reasonable, Remington does not forfeit its protection of the privileged documents, providing it does not rely on the exact nature of the legal advice made at that time or introduce its contents to prove these assertions as part of its legal case. Nor are the facts here so intertwined with the assertion of the attorney-client privilege that pleading of the facts necessarily reveals part of the privileged information.

The second application of waiver that Remington urges is where the information is required to permit truthful resolution of the issue. *See, e.g., Jules Jurgensen/Rhapsody, Inc. v. Rolex Watch, U.S.A., Inc.,* C.A. No. 85–5605, 1989 WL 6210 at *1 (E.D.Pa.1989); *Hoechst Celanese Corp. v. National Union Fire Ins. Co.,* C.A. No. 89C–SE–35, slip op. at 17 (Del.Super.Ct. Feb. 21, 1992) (stating two categories). This application stems from the principle of anticipatory waiver and is actually consistent with *Hearn* as it was originally conceived.[6]

**5.** The Eighth Circuit has stated that in determining implied waiver a court should examine (1) implied intention and (2) fairness and consistency. *Sedco Int'l v. Cory,* 683 F.2d 1201, 1206 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

**6.** At its inception the rule in *Hearn* was generally consistent with the traditional notion of anticipatory waiver and the concern over duplicitous use of privileged communications. In proposing its test, the *Hearn* court developed "a new and narrowly limited exception." *Hearn,* 68 F.R.D. at 580. In attempting to state some "strict limitations" to this exception, the court emphasized the nature of the communications. *Id.* at 582. "[T]he contents of the communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defense ...; they inhere in the controversy itself, and to deny access to

The way in which courts have dealt with this type of waiver has become inconsistent and unnecessarily complicated. If the information is actually required for a truthful resolution of the issue on which the party has raised by injecting the issue, the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case. If the Court cannot find information necessary for a truthful resolution at this point, it will not find the evidence convincing enough to meet the burden of persuasion. Often, although courts speak in terms of necessity, the party reveals that it is trying to rely on part of its privileged information, in which case the first principle compels disclosure. In the type of case here the party can still make its choice explicitly and assume the risk for failing to disclose materials claimed to be necessary to determine the truth where the party has the burden of proof. *See Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266, 277 (S.D.N.Y.1958); *cf.* Davidson and Voth, *supra,* at 649 ("[T]he better

rule might be one which restricts subject matter waiver to the case in which the client affirmatively uses an attorney-client communication as evidence."); Marcus, *supra,* at 1633 ("[T]his waiver doctrine should be limited to cases in which the privilege-holder injects the privileged material itself into the case."). If the party fails to allow pre-trial discovery of a confidential matter, the party will be precluded from introducing that evidence. *International Telephone & Telegraph Corp. v. United Telephone Co.,* 60 F.R.D. 177, 186 (M.D.Fla. 1973).

The Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant. Liberty Mutual argues it needs the documents in order to determine what Remington knew about the discharges of pollutants it was sued for, the nature of those discharges, whether Remington adequately performed its responsibilities under the policies, the reasonableness of its actions, how it has acted and what it knew in the past, and the amount

them would preclude the court from a fair and just determination of the issues." *Id.* Thus, if the party wishes to establish the elements of the case or affirmative defense on which it has the burden of proof, it must divulge this information in order to prove its case or attempt to shield only part of the information. The court should not adopt the position of a party that has the burden of proof where it lacks the information to determine the issue justly and fairly.

It is worth noting that various courts have attempted to limit the expansive reading of *Hearn* in various ways. Some have restricted *Hearn* by noting that the party seeking to pierce the attorney-client privilege must overcome a high burden. *See, e.g., Chase Manhattan Bank v. Drysdale Secur. Corp.,* 587 F.Supp. 57, 58 (S.D.N.Y.1984); *International Business Machines Corp. v. Comdisco, Inc.,* C.A. No. 91–C–07–199, 1992 WL 52143 at *3 (Del.Super.Ct. March 11, 1992). Other courts have attempted to place a limitation within the statement of the *Hearn* test by construing the definition of what is "at issue" or "vital" less expansively. For instance, the court in *Standard Chartered Bank v. Ayala Int'l Holdings* held that filing counterclaims failed to satisfy the second and third elements of the *Hearn* test. 111 F.R.D. 76, 81 (S.D.N.Y.1986). The actual legal advice rendered by its attorneys was not placed "in issue," even though it may have been relevant in the case. *Id.* at 80–85.

In this spirit some courts have listed the types of communications to which the doctrine could apply. *See, e.g., Sedco Int'l v. Cory,* 683 F.2d 1201, 1206 (8th Cir.1982) ("Courts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, [i.e., a malpractice suit,] and when a client asserts reliance on an attorney's advice as an element of a claim or defense." (citations omitted)); *Jules Jurgensen/Rhapsody, Inc. v. Rolex Watch U.S.A., Inc.,* C.A. No. 85–5605, 1989 WL 6210 at *1 (E.D.Pa.1989) (Implied waiver occurs generally "only where the party resisting discovery 'raises as a defense that which transpired between client and counsel, or reliance on advice of counsel, or questions counsel's authority.'" (citations omitted)); *Clark v. City of Munster,* 115 F.R.D. 609, 614 (N.D.Ind.1987) ("[T]he privileged communications were not placed at issue [because the party] has not challenged the advice given to him by his attorney nor has he attempted to rely upon that advice as the basis of a claim or defense."). In accord with this approach, many statements of the doctrine also require the privileged information to be "directly at issue." *See, e.g., Hearn,* 68 F.R.D. at 583; 4 *Moore's Federal Practice* ¶ 26.64[3–.2] at 26–385 (1991); *see also In re Carter,* 62 B.R. 1007, 1014 (Bankr.C.D.Cal.1986) (Waiver occurs "[i]f the

of liability. D.I. 232 at 9–11. It is always possible that the client's motive or conduct was influenced by something his attorney told him, but compelling the production cannot be justified solely as a means to check the insured's statements.[7] The elements of the attorney-client privilege are not designed to preclude the disclosure of relevant factual information. *See Sedco Int'l v. Cory*, 683 F.2d 1201, 1205 (8th Cir.1982). What Remington's officials knew and did at the Connecticut sites, in response to legal action, and in their decision to seek coverage are subject to discovery, which Liberty Mutual has already taken the opportunity to pursue.

Accordingly, based on Remington's assertion of attorney-client privilege and Liberty Mutual's assumption of correctness, no waiver can be implied merely because Remington instituted this action against Liberty Mutual. This conclusion is strengthened by the determination of the lower courts in Connecticut that insurance coverage actions did not foreclose the assertion of attorney-client privilege. As previously discussed, these decisions are entitled to significant weight in determining how the Supreme Court of Connecticut would rule on the waiver of attorney-client privilege. At the same time, Remington's successful assertion of the attorney-client privilege for a particular document will foreclose it from introducing the contents of the privileged document at trial and from relying on the content of legal advice contained in those documents in order to establish any of the elements of its case against Liberty Mutual.

## C. *The Cooperation Clause*

■ The claim that the "cooperation clause" in the insurance policy prevents the assertion of attorney-client privilege relies on a theory of contractual waiver. The pertinent clause reads:

> The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy.

D.I. 232 at 25 n. 18.

Liberty Mutual largely relies on *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, which interprets another cooperation clause to "impose[ ] a broad duty of cooperation" that "is without limit or qualification." 144 Ill.2d 178, 161 Ill.Dec. 774, 780, 579 N.E.2d 322, 328 (1991). *See also SCM Corp. v. Lumbermans' Mutual Casualty Co. (In re Environmental Ins. Declaratory Judgment Actions)*, Docket Nos. L–8573–89 and L–96187–87 (N.J.Super.Ct., Law Div. Sept. 20, 1991). Although some differences in construction may be due to the wording in respective clauses,[8] Connecticut courts deciding the issue have explicitly rejected constructions of cooperation clauses that would compel the production of privileged documents in insurance cases. *Reichhold, supra,* bench op. at 29–35; *Carrier Corp. v. Travelers Indemnity Co., supra,* bench op. at 4; *cf. Chenkus v. Dickson,* No. 28–20–07, 1990 WL 283216 at *2 (Conn.Super.Ct. Sept. 7, 1990) ("Simply because an insured has a duty to cooperate with assigned defense counsel, the insured should not lose his rights to a defense protected by the attorney-client privilege."). Several other courts have also "reject[ed] the con-

---

exact nature of the former attorney's advice is put in-issue.").

7. It is not enough to contend that a general principle of fairness requires waiver in order to determine the truth of the insured's statements. First, this principle would apply to any litigant offering evidence on a relevant issue. Marcus, *supra,* at 1632 n. 147. Second, it is worth noting that a lawyer's ethical duty prevents the lawyer from assisting the client in committing perjury. *Id.* Finally, the liberal discovery rules

gives the parties many tools to ferret out the truth in this type of case.

8. In *Waste Management,* the cooperation clause provided that the insureds had the duty to assist insurers in the conduct of suits and to "give all such information and assistance as the insurers may reasonably require." *Waste Management v. International Surplus Lines Ins. Co.,* 144 Ill.2d 178, 161 Ill.Dec. 774, 779–80, 579 N.E.2d 322, 327–28 (1991).

clusion ... that the insured has thereby forever contractually waived the attorney-client privilege." *Bituminous Casualty Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D.Minn.1992); *see, e.g., FMC Corp. v. Liberty Mutual Ins. Co.*, C.A. No. 643058, Order at 2 (Cal.Super.Ct. Sept. 13, 1991) (D.I. 260 at Ex. L); *Playtex, Inc. v. Columbia Casualty Co.*, No. 88C–MR–233, Faw, SDM, slip op. at 19 (Del.Super.Ct. May 1, 1990).

The Court concludes that the cooperation clause here does not imply a duty to produce documents protected by attorney-client privilege in a coverage dispute. Liberty Mutual does not seek these documents in order to cooperate on underlying litigation, but to succeed in Remington's coverage dispute against Liberty Mutual. Insurance law principles do not support imposing a duty to cooperate that applies regardless of coverage. A leading treatise states that "upon the insurer's anticipatory breach of its duty to indemnify the insured, the insured is freed from its obligations under the cooperation clause to the extent necessary to reasonably protect itself against the breach." 8 Appelman, *Insurance Law and Practice* § 4786 (Supp.1991). Remington's position is consistent with its duties under the insurance policy, for either the policy provides coverage, in which case the denial of coverage breaches the insurance contract and relieves Remington of the duty to cooperate, or there is no duty to cooperate because the damage is not the type "to which insurance is afforded under this policy." D.I. 232 at 25 n. 18. On the other hand, Liberty Mutual cannot simultaneously contend that it is entitled to performance of this duty and that its previous denial of coverage was justified.

### D. *The Common Interest Exception*

Liberty Mutual also urges the production of attorney-client privileged documents because the parties share a common interest in minimizing exposure in connection with the underlying allegations, even though the

insurer had no attorney-client relations with those attorneys. In *Waste Management, Inc. v. International Surplus Ins. Co.*, the Illinois Supreme Court accepted this strange theory, reasoning that the commonality of interests creates an exception to the attorney-client privilege even though the parties become adverse. 144 Ill.2d 178, 161 Ill.Dec. 774, 780, 579 N.E.2d 322, 328 (1991). A few other courts appear to have accepted this broad interpretation.[9] *See, e.g., Occidental Chem. Corp. v. Hartford Accident and Indem. Corp.*, Index No. 410009180 (N.Y.Sup.Ct., Niagara Co., Nov. 2, 1990) (D.I. 233 at Ex. 16).

The attorney-client privilege does not apply under the common interest exception because of the absence of confidentiality, one of the elements necessary for forming attorney-client privilege. Most clearly, confidentiality is absent between two parties where they jointly and simultaneously consult with an attorney and statements are made directly in each other's hearing. A leading treatise explains:

> The common interest doctrine is one step beyond the joint consultation where communications by two clients are made directly in each other's hearing is the situation where two parties separately interested in some contract or undertaking, as in the case of borrower and lender or insurer and insured, *engage the same attorney to represent their respective interests, and each communicates separately with the attorney about some phase of common transaction.* Here again it seems that the communicating client, knowing that the attorney represents the other party also, would not ordinarily intend that the facts communicated should be kept secret from him. Accordingly, the doctrine of limited confidentiality has been applied to communication by the insured under a liability insurance policy *to the attorney employed by the insurance company to*

**9.** Some of the decisions that Liberty Mutual cites as support are distinguishable because an attorney had been retained to represent both the insured and the insurer in a third-party action. That situation is not applicable here, for Liberty Mutual never had an attorney-client relation with any of Remington's attorneys in the underlying actions.

418

*represent both the company and the insured.*

McCormick on Evidence § 91 (1984) (emphasis added). According to Liberty Mutual, "the insurer and insured are deemed to have a common lawyer with respect to underlying claims." D.I. 232 at 24 n. 17. The Court finds no principled reason to deem such a relation to exist or otherwise to engage in such a legal fiction.

The Court follows those courts that have concluded that "the rationale which supports the 'common interest' exception to the attorney-client privilege simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials." *Bituminous Casualty Corp. v. Tonka Corp.,* 140 F.R.D. 381, 386 (D.Minn.1992). *See also FMC Corp. v. Liberty Mutual Ins. Co.,* C.A. No. 643058, Order at 2–3 (Cal.Super.Ct. Sept. 13, 1991) (D.I. 260 at Ex. L); *Society Corp. v. American Casualty Co.,* C.A. No. 1: 91CV0327, Order at 5 (N.D.Ohio July 24, 1991) (D.I. 260 at Ex. M); *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation,* MDL No. 764, slip op. at 6–10, 1990 WL 90495 (E.D.Pa. June 27, 1990) (D.I. 260 at Ex. N); *Hoechst Celanese Corp. v. National Union Fire Ins. Co.,* C.A. No. 89C–SE–35 (Del.Super.Ct. Feb. 21, 1992). The doctrine should not apply where "the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by" Remington and Liberty Mutual. *Society Corp. v. American Casualty Co., supra,* Order at 5; *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation, supra,* slip op. at 10 n. 7; *Carey–Canada, Inc. v. Aetna Casualty & Surety Co.,* 118 F.R.D. 250, 251 (D.D.C.1987). This result is also in accord with the Connecticut court that has directly considered the issue. *Reichhold Chemicals v. Hartford Accident & Indemnity Co.,* CV–88–0351982, bench op. at 29–33 (Conn.Super.Ct. Feb. 1, 1991). The insurer asserts that the parties shared an interest in lowering the amount of damage in the underlying action. Even assuming this to be true, the parties did not then and do not now share an interest in characterizing how that damage occurred, what type of damage has occurred, or how Remington responded to the damage. These and other issues are interwoven into those issues in which the parties' interests may have overlapped. This litigation, as well as the common occurrence of insurance litigation in general, undermines the proposition that the Court should assume or imply that Remington did not intend to keep its communications confidential from its insurer without an attorney acting on the behalf of both parties.

## II. WORK PRODUCT DOCTRINE

Some of the documents noted on the Revised Privilege Log by Remington are claimed to be protected by the work product doctrine. The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3). Rule 26(b)(3) allows the production of materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). The rule gives special protection to what is commonly referred to as opinion work product. "[T]he mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" may not be overcome by a showing of substantial need. *Id.* Federal law governs the rule's application. *See, e.g., Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 875 (5th Cir.1991) (distinguishing state law applicable to attorney-client privilege and Federal Rule of Civil Procedure 26(b)(3) and its governing authority).

Although "the attorney-client privilege and work product doctrine spring from the same common law origin," *In re Grand Jury Proceedings,* 473 F.2d 840, 844 (8th Cir.1973), the contemporary work product doctrine "is distinct from and broader than the attorney-client privilege." *United*

*States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975). As shown by Rule 26(b)(3) and the previous discussion of the attorney-client privilege, the elements are different. Unlike attorney-client privilege, the right to assert the work product barrier to disclosure belongs in large part to the attorney. *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 801 n. 4 (3d Cir.1979). In addition to protecting confidentiality in the attorney-client relationship, the work product doctrine affords some additional protection to the attorney from unfair disclosure. The Supreme court stated that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Without this protection, "much of what is now put down in writing would remain unwritten." *Id.* at 511, 67 S.Ct. at 393.

### A. The Showing Of Necessity To Overcome The Protection Of The Work Product Doctrine

 One of the differences between attorney-client privilege and work product doctrine is that the latter can be discovered by a showing of necessity in certain cases. For the purposes of the present motion, Liberty Mutual has accepted the designation of the documents in Remington's Revised Privilege Log as protected by the work product doctrine in the underlying actions. *See supra* note 1. In order to gain factual work product, Liberty Mutual must show a substantial need for the documents and that their equivalent cannot be acquired without undue hardship. *See* Fed. R.Civ.P. 26(b)(3). The Third Circuit also allows the discovery of opinion work product on a showing of good cause in rare situations, although this standard is evidently more difficult to meet than that for factual work product. *See In re Grand Jury Investigation,* 599 F.2d 1224, 1230–31 (3d Cir.1979). The Court cannot conclude that Liberty Mutual has made such a showing with regard to any documents listed in the Revised Privilege Log. The arguments presented in support of this motion point to a general need for relevant information but are insufficient to meet the appropriate standard for either factual or opinion work product.

### B. The Availability Of Work Product Protection

Liberty Mutual contends that the protection for opinion work product "would not screen information directly at issue." 4 *Moore's Federal Practice* ¶ 26.64[4] at 26–385 (2d ed.1991). *See, e.g., Donovan v. Fitzsimmons,* 90 F.R.D. 583 (N.D.Ill.1981); *Truck Ins. Exchange v. St. Paul Fire & Marine Ins. Co.,* 66 F.R.D. 129 (E.D.Pa. 1975). The application of the "at issue" doctrine is properly analyzed as an implied waiver rather than a showing of necessity, whose requirements are laid out by Rule 26(b)(3) and the case law that has interpreted it. Mixing the doctrine with showings of general need leads to uncertain results and broad disclosure without distinctions between factual and opinion work product. Implying waiver too broadly and without certainty can undermine the role of work product doctrine by eroding the confidence that can be placed in it. *See generally* Marcus, *supra.* The application to work product brings special consideration with regard to the protection for opinion work product. As the Eighth Circuit has stated, "courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client." *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977).

 The Court finds the tentative guideline of the Supreme Court to be persuasive in determining when work product is put directly "at issue." Work product protections may be waived where "counsel attempts to make a testimonial use of these materials." *United States v. Nobles,* 422 U.S. 225, 239 n. 14, 95 S.Ct. 2160, 2171 n. 14, 45 L.Ed.2d 141 (1975). Consistent with this principle, Remington may not introduce the contents of any material protected

by the work product doctrine at trial nor rely on the content of those documents in order to establish any of the elements of its claims in this case against Liberty Mutual.

None of the other theories urged upon the Court applies here. Since the Court has already concluded that Remington has no duty to cooperate in this coverage dispute, it is not necessary to determine whether this duty to cooperate compels the production of material protected by the work product doctrine. Furthermore, the common interest exception does not apply to the work product doctrine. As previously explained, where the doctrine applies, it is because there is no confidentiality inherent in the party's communications. The work product doctrine serves a purpose in giving the attorney a zone of privacy. *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). There is simply no reason to apply the exception to the work product of an attorney working on the behalf of one party.

## IV. CONCLUSION

Courts have apparently diverged in the areas we have addressed here. For the foregoing reasons, the Court has determined that no waiver or principle categorically prevents the application of either the attorney-client privilege or work product doctrine in this case. In turn, Remington is prevented from disclosing or relying on these documents not subject to discovery in proving the elements of its claims asserted in this action.

An order will be entered consistent with this Memorandum Opinion.