**The NORTH RIVER INSURANCE COMPANY, Plaintiff,**

**v.**

**PHILADELPHIA REINSURANCE CORPORATION and Cigna Reinsurance Company, individually and as successor to INA Reinsurance Company, Defendants.**

**Civ. A. No. 91–1323.**

United States District Court, D. New Jersey.

July 21, 1992.

As Amended Aug. 12, 1992.

Dennis G. Jacobs, Brian G. Snover, Robert R. Pollowitz, Simpson, Thatcher & Bartlett, New York City, for plaintiff.

Thomas A. Allen, Ellen K. Burrows, Julia M. Melendez, White & Williams, Westmont, N.J., for defendant CIGNA Reinsurance.

Paul Kanefsky, Buchalter, Nemer, Fields & Younger, New York City, for defendant Philadelphia Reinsurance.

## OPINION

WOLIN, District Judge.

This is an appeal by CIGNA Reinsurance Company ("CIGNA Re") pursuant to Rule 40D4(a) of the General Rules of the United States District Court for the District of New Jersey. CIGNA Re seeks reversal of that part of the Opinion and Order of Magistrate Judge Pisano filed April 6, 1992, by which Judge Pisano denied CIGNA Re's motion to compel discovery of attorney-client documents created in connection with Alternative Dispute Resolution ("ADR") proceedings between the North River Insurance Company ("North River") and Owens–Corning Fiberglas Corporation ("OCF"). For the reasons explained below, the Court will deny the appeal and affirm Judge Pisano's decision.

## BACKGROUND

This action is a reinsurance coverage dispute between North River, the reinsured, and CIGNA Re, the reinsurer. North River has alleged that under a reinsurance agreement, CIGNA Re must indemnify North River for sums paid to OCF for costs of defense paid in connection with claims made pursuant to excess policies of insurance. One issue on the motion before Judge Pisano was whether certain attorney-client documents, related to North River's obligation to pay defense costs to OCF, are discoverable.

Thousands of products liability actions were filed against OCF in the 1970s and 1980s arising from its sales of asbestos-containing products. In 1985, North River, OCF's excess insurer, along with a number of other insurers of asbestos manufacturers, entered into the "Wellington Agreement" in an effort to simplify and reduce the costs of resolving insurance coverage claims arising from sales of asbestos. That agreement provided for the resolution of claims through ADR. It also created a presumption that issuers of policies would pay defense costs unless the policies expressly provided to the contrary. (Wellington Agreement Section 11). To contest the presumption to pay defense costs, the Wellington Agreement required compliance with a strict scheduling procedure. (Wellington Agreement, Appendix D).

Pursuant to the Wellington Agreement, OCF and North River engaged in the arbitration of OCF's claims against North River. Following extensive discovery and a six-day evidentiary hearing before a retired federal judge acting as arbitrator, a decision was issued in July 1989 that required North River to pay OCF's defense costs on covered asbestos claims. In his decision, the arbitrator determined that North River was obligated to pay defense costs on two alternative grounds: (1) it had waived its right to contest payment of defense costs by its failure to comply with the scheduling procedure; and (2) "Within the meaning of the Wellington Agreement, [the policy between North River and OCF] does not expressly provide that allocated expenses [i.e., defense costs] are not payable", and hence must be paid. *See* Memorandum Opinion and Judgment dated July 26, 1989, annexed as Exhibit A to Exhibit 1 of Defendant's Appendix on Appeal. North River commenced an appeal of the ADR decision, but then abandoned the appeal. It soon thereafter began to submit claims to CIGNA Re for a part of the defense costs it paid to OCF.

North River asserts in this action that a portion of the costs of defense (approximately $30 million) are covered under the reinsurance agreement between itself and

CIGNA Re. CIGNA Re contends that costs of defense were not covered under the excess policy between North River and OCF, and thus are not covered under the reinsurance agreement. It contends that any obligation incurred by North River to pay such costs was due to its failure to preserve its rights under the Wellington Agreement, and may not be recovered from it.

The dispute involved on this appeal centers on whether attorney-client communications between North River and its counsel during the ADR proceeding are discoverable. In particular, CIGNA Re seeks to discover documents that bear on North River's decision to abandon its appeal of the arbitrator's decision holding North River responsible for payment of defense costs. North River contends that none of the communications between it and its counsel are discoverable. CIGNA Re contends on several grounds that the documents may be discovered. The Court will address each argument separately.

## DISCUSSION

### A. *Standard of Review*

■ A magistrate's adjudication of a non-dispositive motion will be set aside only if the order is found to be clearly erroneous or contrary to law. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (citing 28 U.S.C. § 636(b)(1)(A)); *see also* Fed.R.Civ.P. 72(a); Rule 40 D(4) of the General Rules for the U.S.Dist.Ct. for the Dist. of N.J. ("the local rules"). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

### B. *The Common Interest Doctrine*

■ CIGNA Re contends that it is entitled to discover the attorney-client communications in issue under the "common interest" doctrine. The "common interest" doctrine applies when multiple persons are represented by the same attorney. In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as against the rest of the world. *See United States v. Moscony*, 927 F.2d 742, 753 (3d Cir.1991), *cert. denied*, — U.S. ——, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991); *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir.1986). The clients may not, however, later assert the privilege against each other after their interests become adverse. *See McCormick on Evidence* § 91 at 219 (3d ed. 1984); 8 *J. Wigmore on Evidence* § 2312 at 605–06 (hereafter *"Wigmore"*); *Longo v. American Policyholders Ins. Co.*, 181 N.J.Super. 87, 91–92, 436 A.2d 577 (Law Div.1981) (holding that communications between insurer and shared counsel in underlying action must be produced to insured); *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill.2d 178, 161 Ill.Dec. 774, 780, 579 N.E.2d 322, 328 (1991); *Independent Petrochemical Corp. v. Aetna Cas. and Sur. Co.*, 654 F.Supp. 1334, 1365–66 (D.D.C.1986) (applying common interest doctrine to compel production of insured's communications with counsel related to underlying claim). The classic statement of this principle is by Professor Wigmore, who stated:

> [A] communication by A to X as the common attorney of A and B, who afterwards become party opponents, is not privileged as between A and B since there was no secrecy between them at the time of communication.

*Wigmore* § 2312 at 605–06.

The common interest doctrine has been recognized in the insured/insurer context when counsel has been retained or paid for by the insurer, and allows either party to obtain attorney-client communications related to the underlying facts giving rise to the claim, because the interests of the insured and insurer in defeating the third-party claim against the insured are so close that "no reasonable expectations of confidentiality" is said to exist. *Carey–Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118

F.R.D. 250, 251 (D.D.C.1987). Communications that relate to an issue of coverage, however, are not discoverable. *Waste Management*, 161 Ill.Dec. at 788, 579 N.E.2d at 336; *Independent Petrochemical*, 654 F.Supp. at 1365. This distinction is recognized because the interests of the insurer and its insured with respect to the issue of coverage are always adverse.

The relationship between CIGNA Re and North River does not fall within the confines of the classic common interest doctrine, because North River retained its own counsel wholly independent from CIGNA Re, and CIGNA Re had no input in any respect into the relationship between North River and its counsel, nor otherwise controlled that relationship. CIGNA Re relies primarily on the Illinois Supreme Court's decision in *Waste Management* to support its argument that production of the attorney-client documents is required under the common interest doctrine.

Although much law exists that addresses the application of the common interest doctrine as it applies between an insured and insurer that are adverse to each other, not one case, published or unpublished, has been cited to the Court that addresses application of the doctrine as between adverse reinsureds and reinsurers. CIGNA Re contends that the common interest doctrine as developed in the insured/insurer context is highly analogous to the reinsured/reinsurer context, and should therefore be fully applied. North River, however, asserts that the "duty to defend", present in the direct insurance context but absent in the reinsurance context, is the linchpin of the common interest doctrine, and should therefore preclude application of the doctrine in the reinsurance context. The Court finds that it need not determine whether differences between reinsurance and direct insurance require a different application of the common interest doctrine, because it concludes that, even under the doctrine as developed in the direct insurance context, the documents in issue are not discoverable.

The Illinois Supreme Court's decision in *Waste Management*, the principle decision relied on by CIGNA Re to support its position, is the only published opinion that has extended the common interest doctrine to apply even when an insured's counsel neither represented the insurer nor was retained by the insurer.[1] *Waste Management*, 161 Ill.Dec. at 780, 785, 579 N.E.2d at 328, 333. The Court finds, as have two other District Courts, that the *Waste Management* decision is unduly broad. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 417–418, (D.Del. 1992) (rejecting *Waste Management*); *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386–87 (D.Minn.1992) (same). In the Court's view, the common interest doctrine is completely unlashed from its moorings in traditional privilege law when it is held broadly to apply in contexts other than when there is dual representation. The Illinois Supreme Court went too far when it held that there is no expectation of confidentiality as to communications between an insured and his independently-retained counsel, even in the absence of a contractual duty to disclose information. *Waste Management*, 161 Ill.Dec. at 785, 579 N.E.2d at 333. As a matter of general privilege law, there is no automatic waiver of the attorney-client privilege merely because an insured and its insurer have a "common interest" in the outcome of a particular issue. That waiver may be found only when there has been a dual representation of both parties, or the privilege has otherwise been waived by, for

---

**1.** CIGNA Re additionally relies on two unpublished trial court decisions from different jurisdictions to support its position, neither of which the Court finds of substantial precedential value. The first, *Occidental Chemical Corp. v. Hartford Accident & Indemnity Co.*, No. 41009/80 (N.Y.Sup.Ct., Niagara Cty. May 7, 1991), has been reversed. *See Occidental Chemical Corp. v. Hartford Accident & Indemnity Co.*, — A.D.2d ——, 584 N.Y.S.2d 247, (4th Dep't 1992). The second decision, *SCM Corp. v. Lumberman's Mut. Cas. Co. (In re Environmental Ins. Declaratory Judgment Actions*, No. L–8573–89, L–9687–87 (N.J.Law Div. September 20, 1991), as an unpublished decision, is by New Jersey State Court Rules of no precedential value. *See* N.J.Ct.R. 1:36–3 ("No unpublished decision shall constitute precedent or be binding upon any court").

example, a party's conduct, or by contract. Thus, although Judge Pisano analyzed the issue in a different way, he reached a correct result in finding that the "common interest" doctrine did not require North River to produce its attorney-client documents to CIGNA Re.

## C. *The Cooperation Clause*

■ CIGNA Re also argues that North River has waived its attorney-client privilege as to documents related to the underlying claim by OCF for coverage through the "cooperation clause" contained in the reinsurance certificates issued by CIGNA Re to North River. That provision states:

> The company [North River] shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

Certificate of Facultative Reinsurance, annexed as Exhibit G to CIGNA Re's Motion to Compel, Appendix No. 1.

In *Waste Management*, the Illinois Supreme Court held that a broadly-worded cooperation clause was enforceable even after the parties had become adverse, and also effectively waived the insured's right to assert the attorney-client privilege. The clause in issue gave the insurer the right to control the defense of any claim against the insured, and required that the insured "shall give all such information and assistance as the insurers may reasonably require". *Waste Management*, 161 Ill.Dec. at 779–80, 579 N.E.2d at 327–28. That clause was found by the court to "impose[ ] a broad duty of cooperation and [was] without limitation or qualification." *Id.*, 161 Ill.Dec. at 780, 579 N.E.2d at 328. The court also rejected the insured's argument that the purpose of the cooperation clause was mooted once the underlying claim had been settled. *Id.* It instead held that the clause was enforceable as long as the insurer sought to enforce it, even after the parties had become adverse. *Id.* In summarizing, the court stated:

> A fair reading of the contract renders any expectation of attorney-client privilege, under these circumstances, unreasonable. We conclude that the element of confidentiality is wanting and, therefore, the attorney-client privilege does not apply to bar discovery of the communications in the underlying lawsuits.

*Id.*

CIGNA Re asserts that the cooperation clause contained in the reinsurance certificate it issued to North River is an enforceable contract right that negates any reasonable expectation of confidentiality between North River and its counsel. North River relies on *Remington Arms* and *Bituminous Casualty* to refute this argument.

In *Remington Arms*, the court rejected the *Waste Management* court's view that a cooperation clause encompasses communications between an insured and its independently-retained counsel sought for the purpose of defeating a claim for coverage. It stated that

> the cooperation clause here does not imply a duty to produce documents protected by attorney-client privilege in a coverage dispute. Liberty Mutual does not seek these documents in order to cooperate on underlying litigation, but to succeed in Remington's coverage dispute against Liberty Mutual.

*Remington Arms*, at 417. Similarly, in *Bituminous Casualty*, the court found "the reasoning of the Illinois Supreme Court to be fundamentally unsound." 140 F.R.D. at 386. It therefore

> reject[ed] the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege. To hold that an insurance policy creates a contractual waiver of the attorney-client privilege, even when the insurance company later sues the insured contending the insured's claim is not covered by the policy, would completely eviscerate the attorney-client

privilege. Absent a showing that the parties intended the language of the cooperation clauses of the insurance policies at issue here to work a waiver of the attorney-client privilege, the court declines to follow the holding of *Waste Management* to find a contractual waiver of the privilege.

*Id.*

 This Court agrees with the holdings of *Remington Arms* and *Bituminous Casualty,* and therefore rejects the reasoning of *Waste Management.* Although a reinsured may contractually be bound to provide its reinsurer with all documents or information in its possession that may be relevant to the underlying claim adjustment and coverage determination, absent more explicit language, it does not through a cooperation clause give up wholesale its right to preserve the confidentiality of any consultation it may have with its attorney concerning the underlying claim and its coverage determination. Provided that the reinsured has been forthright in making available to its reinsurer all factual knowledge or documentation in its possession relevant to the underlying claim or the handling of that claim, it has satisfied its obligations under the cooperation clause. The reinsurer is not entitled under a cooperation clause to learn of any and all legal advice obtained by a reinsured with a "reasonable expectation of confidentiality." *Carey–Canada,* 118 F.R.D. at 251.

CIGNA Re contends that the documents that it seeks to have produced were not created with a reasonable expectation of confidentiality because North River produced a number of other attorney-client documents to CIGNA Re on May 21, 1991. Reply Brief at 12. Counsel for North River represented to the Court at oral argument on this motion that the documents previously produced to CIGNA Re were part of North River's official claims file, and that the documents it has withheld were segregated from the claims file and maintained in confidence at a different location. This position has been maintained consistently by North River from the inception of this discovery dispute. *See* ¶ 4,

Allen Affidavit dated March 9, 1992, annexed as E to CIGNA Re's Motion to Compel ("we were being provided access to *only* "of record" portions of the file and ... were not being provided with, e.g., internal memoranda and attorneys' notes regarding preparation of the case" (emphasis in original)). CIGNA Re has not refuted or otherwise questioned North River's representation in any way. Consequently, the Court rejects CIGNA Re's contention that North River lacked a reasonable expectation of confidentiality as to the documents it has withheld from discovery. Those documents, as opposed to the attorney-client documents already produced, were from their creation treated with a greater degree of secrecy and expectation of confidentiality.

CIGNA Re further argues that North River had no reasonable expectation of confidentiality with respect to the documents sought because those documents are of a type that under industry custom are ordinarily made available for review. This argument is also without merit. Whether reinsureds typically produce similar documents is irrelevant to the issue whether North River, at the time it created or received the documents in question, intended to withhold those documents from CIGNA Re, and expected that their secrecy would be preserved. Assuming CIGNA Re's representation of industry custom is accurate, it is nevertheless an inaccurate statement of North River's obligations under the reinsurance agreement. Although North River was free to produce such documents if it chose, to facilitate adjustment of its claim, it was not required under the contract to do so. On this count, Judge Pisano's decision was entirely correct.

### D. *Fiduciary Relationship*

 CIGNA Re also argues that the documents in question are discoverable because North River has a fiduciary obligation of full disclosure. Memorandum of Law in Support of Appeal at 16. Although the court in *Mutuelle Generale Francaise Vie v. Life Assurance Co. of Pennsylvania,* 688 F.Supp. 386 (N.D.Ill.1988) found a fiduciary relationship to exist between a

reinsured and a treaty reinsurer, this Court declines to apply its reasoning and holding to a facultative reinsurer.[2] This Court agrees with the observation of the District Judge in *Christiana General Ins. Corp. of New York v. Great American Ins. Co.*, 745 F.Supp. 150 (S.D.N.Y.1990) that "[n]othing in the cases cited by the parties, or discovered by the Court, indicates that the duty between a ceding insurer and a facultative reinsurer rises to the level of being a fiduciary one." *Id.* at 161. The presence of sufficient influence and control over the affairs of another necessary to give rise to fiduciary responsibilities is absent between reinsured and reinsurer. The reinsurer's "right to associate" gives it adequate means by which to keep informed of events that may give rise to coverage under its agreement, and also provides a sufficient means to protect its own interests.[3] Reinsurance agreements are negotiated at arms-length between equally sophisticated parties. Reinsurers are well aware of the risks inherent in reinsurance obligations and are adequately situated to protect their interests. The Court therefore rejects CIGNA Re's argument that North River owed it a fiduciary duty to disclose the contents of its attorney-client communications.

### E. *The "In Issue" Doctrine*

CIGNA Re's last argument is that the withheld documents are discoverable because they pertain to subject matter that has been placed "in issue" by North River. It thus asserts that North River has impliedly waived the attorney-client privilege as to that subject matter under the "in issue" doctrine. In rejecting this argument, Judge Pisano relied on an analysis similar to that later adopted by the court in *Remington Arms*, 142 F.R.D. at 411–416. *Remington Arms* held that the "in issue" doctrine should be construed narrowly to create an implied waiver of the attorney-client privilege only when a party puts "in issue" the *contents* of an attorney-client communication. *Remington Arms*, 142 F.R.D. at 415. This will occur only when the party has asserted a claim or defense that he intends to prove by disclosure of an attorney-client communication. *Id.* ("If the information is actually required for a truthful resolution of the issue ... which the party has raised ..., the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case"). This Court believes that Judge Pisano that the analysis in *Remington Arms* is persuasive, and will accordingly reject CIGNA Re's arguments to the contrary.

North River represented to the Court at oral argument that it has no intention to prove its case in any way by reliance on any attorney-client communication, whether produced or withheld from discovery. It thus cannot be said that North River is using the attorney-client privilege as a "sword and shield" through selective disclosure of privileged documents. CIGNA Re has not identified any other manner through which North River has placed the advice of its counsel or other contents of any privileged communication in issue in this action. Its argument that North River's merely placing the broad question of coverage in issue somehow makes it fair

---

**2.** Several later unpublished decisions from the same District as *Mutuelle Generale* have questioned that opinion's reasoning on the issue of the fiduciary relationship between reinsured and reinsurer. *See Int'l Ins. Co. v. Certain Underwriters at Lloyd's of London*, No. 88–9838, Slip Op. at 52–58, 1991 WL 349907 (N.D.Ill. September 16, 1991); *Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, No. 88–320, Slip Op. at 3, 1989 WL 165045 (N.D.Ill. December 29, 1989).

**3.** The reinsurance certificate issued by Cigna Re to North River provides in Section B as follows:

Prompt notice shall be given to the Reinsurer by the Company of any occurrence or accident which appears likely to involve this reinsurance and while the reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance with the full cooperation of the Company.

See Exhibit G to Cigna Re's Motion to Compel Production of Documents.

game for CIGNA Re to discover confidential attorney-client communications is a misconstruction of the "in issue" doctrine.

It appears that CIGNA Re's primary goal in seeking production of privileged documents is so that it can test the veracity and completeness of North River's disclosure to it as to the facts of the underlying claim dispute. The *Remington Arms* court convincingly rejected this ground for abrogating the attorney-client privilege by explaining that such a construction of the "in issue" doctrine would seemingly apply to any litigant offering evidence in a case on any issue that he has discussed with his attorney, and would drastically alter the traditional boundaries of the privilege. *Id.* at 415 & n. 7.

## CONCLUSION

For the reasons stated above, CIGNA Re's appeal of the portion of Judge Pisano's Opinion and Order filed April 6, 1992 denying production of attorney-client ADR documents will be denied, and that part of the Opinion and Order will be affirmed.[4]

---

4. CIGNA Re is correct in its position, Reply Brief at 8, that Judge Pisano made no determination respecting individual documents, and that CIGNA Re is entitled to contest whether individual documents have been properly characterized as privileged attorney-client communications.