In re IMPERIAL CORPORATION OF AMERICA, Related Litigation.

Ronald L. DURKIN, Trustee of the Benchmark Irrevocable Trust, Plaintiff,

v.

Rodney B. SHIELDS, et al., Defendants.

RESOLUTION TRUST CORPORATION, in its corporate capacity and as Receiver for Imperial Federal Savings Association, Plaintiff,

v.

Robert S. ALSHULER, et al., Defendants.

RESOLUTION TRUST CORPORATION, in its corporate capacity and as Receiver for Imperial Federal Savings Association, Plaintiff,

v.

Stuart I. GREENBAUM, Defendant.

Civil Nos. 92–1003–IEG(LSP), 93–0992–IEG(LSP), 93–1256–IEG(LSP).

United States District Court, S.D. California.

Feb. 15, 1995.

448

Charles Bird, Robert Steiner, Daniel Lawton, San Diego, CA, for defendants.

Frank Burke, L. Allan Songstad, Irvine, CA, for plaintiffs and R.T.C.

## ORDER REGARDING DIRECTOR DEFENDANTS' AND LUCE, FORWARD, HAMILTON AND SCRIPPS' MOTION FOR PROTECTIVE ORDER FOR STEINER LETTERS

PAPAS, United States Magistrate Judge.

On December 1, 1994, counsel for the Director Defendants and counsel for the plaintiffs and the RTC submitted to the court their briefs regarding the use of certain correspondence (hereafter referred to collectively as "the Steiner letters"). On December 15, 1994, counsel for the Director Defendants and counsel for the plaintiffs and the RTC submitted to the court briefs in opposition to the positions taken by each other. On December 20, 1994, the court heard oral argument on the motion. Charles Bird, Robert Steiner and Daniel Lawton appeared on behalf of the Director Defendants. Frank Burke and L. Allan Songstad appeared on behalf of the plaintiffs and the RTC.

The court, having reviewed the moving and opposition papers of counsel, and having heard oral argument, AND GOOD CAUSE APPEARING, HEREBY ORDERS:

### I  *Factual Background*

In early 1989, shareholders of Imperial Corporation of America (hereafter "ICA") and Imperial Savings Association (hereafter "ISA") filed derivative and class action claims against ICA and its directors, officers and third parties alleging, *inter alia,* mismanagement of ICA by its directors and officers. (The 1989 suit is hereafter referred to as the "underlying action"). Shortly after the underlying action was filed, ICA made a demand for settlement on its insurer, American Casualty Company (hereafter "American Casualty"), which had issued primary directors and officers liability insurance coverage.

The directors and officers were represented in the underlying action by Robert Steiner (hereafter "Steiner") and Charles Bird (hereafter "Bird") of the law firm of Luce, For-

ward, Hamilton & Scripps. In the underlying action, the director defendants, certain officer defendants, and ICA entered into a joint defense agreement dated March 10, 1989. The purpose of the agreement was to share confidential information to facilitate the parties' defense of the underlying action. The agreement barred and bars disclosure of "Common Interest Privileged Information" which the agreement defines as "knowledge (including confidential communications from clients), work product, discovery and strategy." Signatories to the joint defense agreement were ICA and ISA's in-house counsel, ICA's and ISA's outside litigation counsel, and counsel for the directors and officers.

On May 25, 1989, Steiner sent a letter to Roger Novak, a claims adjustor for CNA Insurance Companies, an affiliate of American Casualty. The letter, misdated May 25, 1988, analyzes the allegations contained in the complaint of the underlying action and provides a detailed explanation of the investigation regarding the allegations performed to date. The letter contains Steiner's candid analysis of the risk of exposure presented by the underlying action and further addresses a settlement demand made by plaintiffs in the underlying action. Steiner sent copies of this letter to ICA's in-house counsel, ICA's outside litigation counsel, counsel for directors Thygerson and Villani and Reliance National Insurance Company.

On June 13, 1989, the signatories to the March 10, 1989 joint defense agreement entered into a joint defense agreement with American Casualty. That agreement, similar to that of the March 10, 1989 joint defense agreement, is memorialized in a June 13, 1989 letter from Bird addressed to Michael Tone, of the law firm of Peterson, Ross, Schloerb and Seidel, counsel for CNA Insurance Companies and American Casualty. The letter specifically indicates that the purpose of the agreement is to share confidential information to facilitate defense of the claims in the underlying action. The last page of the letter contains the signature of Michael Tone, indicating CNA's and American Casualty's agreement to be bound by the joint defense agreement.

On September 14, 1989, Steiner sent a letter to Michael Tone, counsel for American Casualty, that further detailed the evidence that had been uncovered. The letter, more detailed than the first Steiner letter of May 25, 1989, again contains Steiner's candid analysis of the risk of exposure presented by the underlying action. The letter additionally alludes to the director defendants' need to settle the case and attempts to persuade American Casualty to contribute to the settlement. Copies of the letter were sent to ICA's in-house counsel and outside litigation counsel.

On November 4, 1994, the directors and officers counsel, represented by Daniel Lawton (hereafter "Lawton"), of Luce, Forward, Hamilton and Scripps, took the deposition of the RTC, pursuant to Fed.R.Civ.Pro. 30(b)(6). The deposition was focused on the RTC's damage allegations. The deposition was attended not only by counsel for the RTC and counsel for the directors and officers, but also by counsel for the Shea & Gould defendants and counsel for the derivative plaintiffs and the derivative plaintiffs' lawyers. During the deposition, the RTC's Rule 30(b)(6) designee, Scott Darling, identified the May 25, 1989 and September 14, 1989 letters ("the Steiner letters") as being among the documents upon which he relied in basing his deposition testimony. Lawton questioned Darling about the letters. However, near the end of the deposition, and upon further review of the Steiner letters produced by Darling at the deposition, Lawton realized that the documents were potentially protected from use by the RTC by the joint defense agreement of March 10, 1989. Shortly after the deposition, counsel for the directors and officers learned that the Steiner letters were placed in the document depository to which all counsel in this case have access.

The directors and officers now seek the following:

1. An order requiring the RTC not to divulge the Steiner letters to anyone that is not a party to the joint defense agreements;

2. An order that the Steiner letters be removed from the document depository;

3. An order striking all references to the content of the Steiner letters in the deposition of Scott Darling;

4. An order that any other confidential documents exchanged under the joint defense agreements be maintained as privileged documents and, to the extent any such documents have already been deposited in the document depository, that they be immediately removed; and

5. An award of monetary sanctions against the RTC and its counsel in the amount of $10,000.00 as reimbursement for the fees and costs incurred in pursuing the Motion for Protective Order.

## II  *Attorney–Client Privilege*

■ The directors and officers argue that the Steiner letters are protected by the attorney-client privilege. They assert that the letters are replete with confidential communications from clients to their attorneys and were sent to Roger Novak and Michael Tone, representatives of American Casualty, the liability insurance carrier for the director defendants. They further explain that the insured directors and officers and their insurer shared a common interest in the ultimate outcome of the underlying litigation and specifically in opposing the claimants. To that end, they assert that there must be a free flow of information between and among defense counsel, the insureds and the insurer without any waiver of the attorney-client privilege.

The directors and officers concede, however, that the body of law that discusses the "tripartite" relationship of defense counsel, insured and insurer, has developed in the context of liability insurance policies, in which the insurer has a duty to defend the insured and the right to select defense counsel for the insured. They admit that they find no authority which addresses the attorney-client privilege in the context of liability insurance for directors and officers. However, they cite to commentary that suggests that the differences between a directors' and officers' liability policy (which does not contain a duty to defend nor the insurer's right to retain counsel nor directly control the insured's defense) and the "duty to defend"

type of policy typical of other liability policies, should not affect the issues pertaining to attorney-client privilege. See W. Borgwest and E. Boyle *Duties of The Insured to The Directors and Officers' Insurer,* Directors and Officers Liability Insurance 1990, at 147, 202–03 (P.L.I.1991).

Plaintiffs and the RTC, on the other hand, argue that the Steiner letters are not protected from disclosure by the attorney-client privilege because their was no privileged relationship between the directors and officers and American Casualty. The letters were not written by or to clients of Steiner and do not reveal any director's or officer's communications to Steiner. Moreover, the letters were not written for the purpose of seeking or imparting legal advice. Rather, they were written for the purpose of apprising American Casualty of the status of the litigation and requesting that American Casualty contribute to settlement of the case.

It is undisputed that Steiner and the firm of Luce, Forward, Hamilton & Scripps were retained by the director defendants to represent them in the underlying action. It is also undisputed that Steiner and the Luce firm did not represent American Casualty; rather American Casualty was represented by separate counsel. Further, American Casualty did not pay the director defendants' legal fees, nor did they select or provide counsel to the director defendants. In short, American Casualty's directors and officers policy issued to ICA differs markedly from the type of liability insurance policy to which the directors and officers wish the court to analogize. Unfortunately, the court cannot make such an analogy.

In *Linde Thomson Langworthy Kohn & VanDyke, P.C. v. RTC* 5 F.3d 1508, 1514–1515 (D.C.Cir.1993), the highest court to consider this issue in a similar context, the court flatly rejected an extension of the attorney-client privilege that the director defendants wish this court to adopt. In *Linde,* the RTC issued an administrative subpoena to Linde, et al., a law firm which had contacts to a failed thrift. Linde, et al. refused to comply with parts of the subpoena that requested, *inter alia,* information pertaining to liability insurance coverage and claims. At issue

were documents containing communications with Linde's insurer.

The *Linde* court initially noted that "... (f)ederal courts have never recognized an insured-insurer privilege as such." *Id.* at 1514. It then analyzed the purpose of the attorney-client privilege and noted that "the critical factor for purposes of the attorney-client privilege (is) that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.* at 1514 [quoting *United States v. Kovel* 296 F.2d 918, 922 (2nd Cir.1961)]. The court further noted that an insurer frequently has its own interests, rather than the insured's interests, foremost in mind and often serves as a primary actor. It then concluded:

> We now firmly reject any sweeping general notion that there is an attorney-client privilege in insured-insurer communications. An insured may communicate with its insurer for a variety of reasons, many of which have little to do with the pursuit of legal representation or the procurement of legal advice. Certainly, where the insured communicates with the insurer for the express purpose of seeking legal advice with respect to a concrete claim, or for the purpose of aiding an insurer-provided attorney in preparing a specific legal case, the law would exalt form over substance if it were to deny application of the attorney-client privilege. However, a statement betraying neither interest in, nor pursuit of, legal counsel bears only the most attenuated nexus to the attorney-client relationship and thus does not come within the ambit of the privilege. To paraphrase the *Kovel* case, *if what is sought is not legal advice, but insurance, no privilege can or should exist.*

*Id.* at 1515, (Emphasis added) (footnotes omitted).

Other courts analyzing similar issues have reached the same conclusions. See also *Vermont Gas Sys. v. United States Fid. & Guar. Co.* 151 F.R.D. 268, 277 (D.Vt.1993). ("The 'common interest' doctrine does not apply where there is an adversarial relationship between the insured and insurer as to whether coverage exists, the parties have never shared the same counsel or litigation strategy and the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by the parties"). *NL Industries, Inc. v. Commercial Union Ins. Co.* 144 F.R.D. 225, 231 (D.N.J.1992) ("The common interest doctrine is applicable only when it has been determined that the ... insurer is obligated to defend the underlying action brought against the insured ... and the parties have employed a lawyer to act for them in common. Employment is not created by the fact that the insured's actions inure to the ultimate benefit of the insurer.") (citations omitted). *International Insurance Co. v. Newmont Mining Corp.* 800 F.Supp. 1195 (S.D.N.Y. 1992) (same); *North River Ins. Co. v. Philadelphia Reinsurance Corp.* 797 F.Supp. 363, 366–367 (D.N.J.1992) (same).

The directors and officers cite *Waste Management, Inc. v. International Surplus Lines, Co.* 144 Ill.2d 178, 161 Ill.Dec. 774, 781, 579 N.E.2d 322, 329 (1991) in support of their position. In *Waste Management,* the court, applying Illinois law, required the insured to produce privileged documents to its insurer in a coverage dispute because the attorney for the insurer was "acting for the mutual benefit of both the insured and the insurer." *Id.* However, the Illinois state court's opinion in *Waste Management* is not binding on this court. Moreover, it has been criticized and rejected by most courts that have had the opportunity to visit the issue presented there, as here. See *North River Ins.* 797 F.Supp. at 367; *Remington Arms Co. v. Liberty Mutual Ins. Co.* 142 F.R.D. 408, 417 (D.Del.1992); *Bituminous Casualty Corp. v. Tonka Corp.* 140 F.R.D. 381, 386–87 (D.Mn.1992); *Rockwell Int'l Corp. v. Sup.Ct.* 26 Cal.App.4th 1255, 1261–1262, 32 Cal. Rptr.2d 153, 156–157 (1994).

Here, as noted above, Steiner and the Luce firm did not have an attorney-client relationship with American Casualty. The Steiner letters were not written by or to clients of Steiner and do not reveal any directors' or officers' communications to Steiner. The letters were written for the purpose of apprising American Casualty of the status of the case, not for seeking or imparting legal advice. American Casualty did not have a

duty to defend the directors and officers and did not defend the directors and officers, nor pay their legal expenses. Finally, American Casualty and the directors and officers did not share common legal representation; rather, American Casualty had separate representation. Therefore, based on the case law cited above, this Court finds that the Steiner letters are not protected from disclosure by the attorney-client privilege.

### III   *Work Product Immunity*

### A.   *The Work Product Immunity and Application*

■   Plaintiffs and the RTC argue that the Steiner letters are not entitled to protection from discovery by the work-product immunity. They claim that the letters should be viewed as demand letters sent to American Casualty requesting coverage pursuant to its policy with ICA. Plaintiffs and the RTC suggest that the letters were sent shortly after the plaintiffs in the underlying action made a demand for settlement. They also indicate that the letters contain detailed summaries of the claims against the insureds and evidence uncovered that support those claims. However, they maintain that the letters cannot be entitled to work-product immunity because they do not appear to discuss a joint defense and do not reveal defense strategies or Steiner's mental impressions or opinions regarding the case. Plaintiffs and the RTC further argue that if work-product immunity extends to the Steiner letters, the immunity has been waived by disclosure to adverse parties and/or conduct of the directors' and officers' counsel at the November 4, 1994 deposition of Scott Darling.

The directors and officers argue, on the other hand, that the Steiner letters are entitled to work-product immunity in that they are "opinion work product", which is rarely subject to discovery by a litigation opponent, and enjoy nearly absolute immunity from disclosure. They further argue that a waiver of the work-product immunity did not occur because the initial recipients of the letters were members of the joint defense agreement, for which consent of all signatories to the agreement is required to effectuate a waiver. The directors and officers additionally contend that any conduct of its counsel or co-counsel that might indicate a waiver must be seen as curable inadvertence on their part.

■   The work product doctrine is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) provides that under certain circumstances, discovery may be had of documents prepared in anticipation of litigation or trial by an attorney. However, the rule also provides that:

> In ordering discovery of such materials (trial preparation materials) when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

While trial preparation material may be discoverable upon an appropriate showing, the materials containing mental impressions, conclusions, opinions and legal theories of an attorney are discoverable only in rare and extraordinary circumstances. *Connolly Data Systems v. Victor Technologies, Inc.* 114 F.R.D. 89, 95 (S.D.Cal.1987). See *In re Doe* 662 F.2d 1073 (4th Cir.1981) (holding discovery of opinion work product only in extraordinary circumstances); *In re Murphy* 560 F.2d 326, 336 (8th Cir.1977) ("Opinion work product enjoys a nearly absolute immunity and can be discovered only in rare and extraordinary circumstances"); *Handgards, Inc. v. Johnson and Johnson* 413 F.Supp. 926 (N.D.Cal.1976).

The Supreme Court in *Hickman v. Taylor* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), noted the importance of protecting the thought processes of attorneys.

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble informa-

tion, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their client's interests.

The court's review of the Steiner letters indicates that the letters contain Steiner's candid analysis of the factual circumstances and legal issues arising from the plaintiffs' complaint in the underlying action. The letters contain Steiner's understanding of the facts supporting plaintiffs' contentions, as well as his opinions, conclusions and mental impressions relating to the directors' and officers' risks of exposure to liability. Steiner's comments are the result of his (and/or the Luce firm's) confidential interviews with officers and employees of ICA, and research regarding plaintiffs' claims. It is therefore difficult to see how the letters could be characterized as anything other than "opinion work product," specifically protected from disclosure to opposing counsel.

## B. *Waiver of Work Product Immunity*

Having decided that the Steiner letters constitute "opinion work product," the court must decide whether the counsel for the directors and officers waived the work product protection that is afforded to the Steiner letters.

■ One of the primary functions of the work-product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case. Therefore, analysis of issues of waiver of work product protection must focus on whether the disclosures in issue increased the likelihood that a current or potential opponent in litigation would gain access to the disputed documents. *Bank of the West v. Valley National Bank* 132 F.R.D. 250, 262, (N.D.Cal.1990); *In re Subpoenas Duces Tecum* 738 F.2d 1367, 1374–1375 (D.C.Cir. 1984).

The court notes that the circumstances surrounding the transmittal of the Steiner letters to their various recipients differ in important respects: As discussed in greater detail in Part I above, certain director and officer defendants and ICA entered into a joint defense agreement on March 10, 1989. On May 25, 1989, Steiner sent the first "Steiner letter" at issue to Roger Novak, a claims adjustor for CNA Insurance Company, an affiliate of American Casualty. Almost a month later, on June 13, 1989, the signatories to the March 10, 1989 joint defense agreement entered into a similar joint defense agreement with American Casualty. Thereafter, on September 14, 1989, Steiner sent the second "Steiner letter" at issue to Michael Tone, counsel for American Casualty. As can be seen from this chronology, the first "Steiner letter," dated May 25, 1989, was sent to American Casualty after the defendants in the underlying action entered into a joint defense agreement on March 10, 1989, but *before* American Casualty agreed to be bound by terms of the joint defense agreement on June 13, 1989. Consequently, the court must separately examine the issues of waiver of the work product protection for each letter.

## C. *The May 25, 1989 Steiner Letter*

■ As noted in Part I above, Steiner sent the May 25, 1989 letter to Roger Novak, a claims adjustor for CNA Insurance Company, an affiliate of American Casualty. The letter analyzes the allegations contained in the complaint in the underlying action and contains Steiner's candid analysis of the risk of exposure to the directors and officers presented by that complaint. Steiner sent copies of this letter to ICA's in-house and litigation counsel, as well as to Reliance National Insurance Company, the directors' and officers' excess insurer.

At the time Steiner sent the letter to Novak, the directors and officers and American Casualty were not adversaries in litigation. However, there can be no doubt that Steiner was aware that when an insurer has not committed to indemnify its insured after demand has been made to do so, the possibility of a future coverage action pitting the in-

sured against the insurer is a distinct possibility. Therefore, there can be no doubt that Steiner understood that at the time the letter was sent to Novak, and copied to Reliance, litigation between his clients and American Casualty and between his clients and Reliance National was a very real possibility.[1] Consequently, Steiner's transmittal of the May 25, 1989 letter to American Casualty and Reliance National not only increased the likelihood, but virtually assured, that potential opponents in future litigation would gain access to the disputed documents as well as to Steiner's opinions and thought process regarding his clients' liability. The circumstances here clearly indicate that Steiner intended to waive any work product protection and did so without objection from any members of the joint defense agreement then in effect. Therefore, the court concludes that any work product protection afforded the May 25, 1989 Steiner letter was waived at the time it was sent to American Casualty and Reliance National.

### D. *The September 14, 1989 Steiner Letter and the Joint Defense Agreement*

As noted in Part I above, Steiner sent the September 14, 1989 letter to Michael Tone, counsel for American Casualty. The letter further details evidence uncovered supporting plaintiffs' allegations in the underlying complaint and again contains Steiner's candid analysis, in more detail, of the risk of exposure to his clients presented in the underlying action. The letter, however, was sent to American Casualty presumably under the guise that Steiner's work product contained in the letter would be protected by the June 13, 1989 joint defense agreement entered into between the defendants in the underlying action and American Casualty.[2]

The court's first inquiry regarding the September 14, 1989 Steiner letter must necessarily focus on the joint defense agreement entered into between the defendants and American Casualty on June 13, 1989.

The joint defense privilege protects communications between an individual and an attorney for another when the communications are part of an on-going and joint effort to set up a common defense strategy. To establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the joint defense effort, and (3) the privilege has not been waived. *United States v. Bay State Ambulance & Hosp. Rental Serv.* 874 F.2d 20, 28 (1st Cir.1989) citing *In re Bevill, Bresler & Schulman Asset Management Corp.* 805 F.2d 120, 126 (3rd Cir.1986); see also *Waller v. Financial Corp. of America* 828 F.2d 579 (9th Cir.1987). Courts have held that while the joint defense privilege is an extension of the attorney-client privilege, it also applies to the work-product doctrine. *Western Fuels Assn. v. Burlington N.R.R.* 102 F.R.D. 201, 203 (D.Wyo.1984); *Haines v. Liggett Group* 975 F.2d 81 (3rd Cir.1992).

In this case, the September 14, 1989 Steiner letter fails to satisfy the requirements of the joint defense privilege. A fair reading of the September 14, 1989 letter does not indicate that Steiner's communications to American Casualty were made in the course of a joint defense effort. To the contrary, the letter constitutes a normal business communication between an insured and an insurer, with the insured having the contractual obligation to keep the insurer informed about the insured's insurance claim with the insurer.[3] The letter must also be characterized as a demand that American Casualty contribute to the settlement of the underlying action. There is simply no indication that Steiner and American Casualty had joined forces to

---

**1.** In fact, the directors and officers and their insurers are now adverse parties in coverage litigation pending before this court. *American Casualty v. Thygerson* 93–0010–IEG(LSP); *Reliance Insurance Company v. Thygerson* 93–0178–IEG(LSP).

**2.** The September 14, 1989 letter does not indicate anywhere on its face that it was an undiscoverable confidential or privileged communication, unlike the first Steiner letter dated May 25, 1989.

**3.** The Directors and Officers Liability Policy requires the insureds to give American Casualty any and all information and cooperation it may reasonably require in order to fulfill their obligations under the policy.

set up a common defense strategy. Therefore, the communications contained in the September 14, 1989 Steiner letter could not possibly be designed to further a joint defense effort.

Under these circumstances, there could be no reasonable expectation that the substance of communications contained in the September 14, 1989 letter would remain confidential. Any other result would be an overly broad use of the joint defense privilege. Were the court to accept the directors' and officers' interpretation of the joint defense privilege, any time two or more contractually related entities disclosed confidential information to each other during normal business transactions, the privilege would not be waived unless the parties became directly adverse to each other in subsequent litigation. That is, a mere contractual relationship would allow entities to exchange privileged information for any reason, at any time, without third parties ever being allowed access to the information. Obviously, this is not a logical result. The bounds of the joint defense privilege are more confined than the directors and officers contend. Accordingly, the court rejects the directors' and officers' portrayal of whether the joint defense privilege applies to the September 14, 1989 Steiner letter.

■ That the joint defense privilege does not apply to the September 14, 1989 Steiner letter is further supported by another aspect of the law pertaining to the joint defense privilege. Case law discussing and interpreting the joint defense doctrine discuss the doctrine's applicability to *co-parties* to a litigation sharing confidential communications as part of a joint effort to establish a common defense. See for example, *Bay State Ambulance, supra; Waller, supra; USA v. McPartlin* 595 F.2d 1321 (7th Cir.1979); *Continental Oil Co. v. United States* 330 F.2d 347 (9th Cir.1964); *Polycast Tech. Corp. v. Uniroyal, Inc.* 125 F.R.D. 47 (S.D.N.Y. 1989); *Ohio–Sealy Mattress Mfg. v. Kaplan*

90 F.R.D. 21 (N.D.Ill.1980); *In re Grand Jury Subpoena* 406 F.Supp. 381 (S.D.N.Y. 1975); *Western Fuels Assn. v. Burlington N.R.R.* 102 F.R.D. 201 (D.Wyo.1984).

This court has been unable to find, and counsel for plaintiff and defendants have not cited, any cases in which the joint defense privilege has been extended to an agreement between a party to a litigation and a non-party insurer.[4] Accordingly, the court refuses to extend the doctrine as the directors and officers suggest. Consequently, the joint defense privilege cannot, and does not, apply to the September 14, 1989 Steiner letter.

■ Since the joint defense privilege does not apply to the September 14, 1989 Steiner letter, a similar analysis applied to the May 25, 1989 Steiner letter must apply here. As with the May 25, 1989 Steiner letter, Steiner sent the September 14, 1989 letter to American Casualty at a time when his clients and American Casualty were not adversaries in litigation. However, Steiner was aware, at the time the letter was sent, that his clients and American Casualty were potential adversaries in future litigation, due to American Casualty's position regarding applicable insurance coverage.[5] Therefore, Steiner's transmittal of the September 14, 1989 letter to American Casualty assured that a potential opponent in future litigation would gain access to the disputed document, as well as Steiner's opinions, thought processes and analyses regarding his clients' liability. Therefore, Steiner waived any work-product protection that was afforded the September 14, 1989 letter when he sent the letter to American Casualty. He did so without objection from any members of the defendants' joint defense agreement then in effect.

Therefore, the court here by DENIES the Director Defendants' Motion for Protective Order, and DENIES the Director Defendants' Motion for Sanctions. The court also

---

**4.** Except where the non-party insurer has a duty to defend the insured, has hired counsel for the insured and has the right to control the insured's defense.

**5.** Correspondence from American Casualty to Steiner specifically stated that American Casual-

ty had reserved its rights regarding coverage pertaining to the plaintiffs' claim in the underlying action. See for example letter of Michael Tone to Robert Steiner, dated June 9, 1989, submitted to the court as Plaintiffs' Sealed Exhibit 7.

admonishes counsel that this ruling applies *only* to the May 25, 1989 and September 14, 1989 Steiner letters. Any other document exchanged under the joint defense agreement(s) to which a privilege or protection is claimed is not currently before the court. Therefore the court declines to rule on any such documents until such documents are properly presented to the court for adjudication.

IT IS SO ORDERED.