**SOUTHERN UNION COMPANY,**
a Delaware corporation,
**Plaintiff,**

v.

**SOUTHWEST GAS CORPORATION,**
a California corporation, et al.,
**Defendants.**

No. CV 99–1294–PHX–ROS.

United States District Court,
D. Arizona.

Jan. 29, 2002.

N. Warner Lee, William B. McManus, Ryley Carlock & Applewhite PA, Phoenix, AZ, Eric D. Herschmann, Jessica Mann, Wendy L. Mirsky, Michael M. Fay, Adam Hirshfield, Kasowitz Benson Torres & Friedman LLP, New York City, Tom Q. Ferguson, Shelly L. Dalrymple, Sam P. Daniel, Jr., Doerner Saunders Daniel & Anderson, Tulsa, OK, Christina Carlson Dodds, Daniel W. Bishop, II, PC, Austin, TX, for Southern Union Co.

Michael J. O'Connor, Richard R. Thomas, Douglas F. Behm, Michael Scott McCoy, Michael J. Farrell, Jennings Strouss & Salmon PLC, Phoenix, AZ, Seth Aronson, Marc F. Feinstein, Patrick Lynch, Floy E. Andrews, O'Melveny & Myers LLP, Los Angeles, CA, Michael R. Klein, Steven F. Cherry, Howard M. Shapiro, David P. Donovan, Wilmer Cutler & Pickering, Washington, DC, Michael J. Bowe, Kasowitz Benson Torres & Friedman LLP, New York City, Todd L. Bice, Schreck Brignone & Godfrey, Las Vegas, NV, Thomas R. Sheets, Las Vegas, NV, Paul J. Cleary, Scott R. Rowland, Boone Smith Davis Hurst & Dickman, Tulsa, OK, Steve Morris, Kristina Pickering, Morris Pickering & Sanner, Las Vegas, NV, for Southwest Gas Corp.

Mark M. Deatherage, Michael K. Kennedy, Tom Henze, Gallagher & Kennedy PA, Phoenix, AZ, John J. Swenson, Richard Joseph Doren, Thomas E. Holliday, Gibson Dunn & Crutcher LLP, Los Angeles, CA, John Henry Rule, Oliver Sterling Howard, Thomas James Kirby, David E. Keglovits, Amelia A. Fogleman, Gable & Gotwals, Tulsa, OK, for Oneok Inc.

David J. Damron, Shannon M. Ivanyi, Sanders & Parks, PC, Phoenix, AZ, for Michael Maffie.

Michael P. Anthony, Carson Messinger Elliott Laughlin & Ragan PLLC, Phoenix, AZ, Michael W. Sillyman, Brian Jay Schulman, Kutak Rock LLP, Scottsdale, AZ, for James M. Irvin.

Michael D. Kimerer, Thomas V. Rawles, Kimerer & Derrick PC, Phoenix, AZ, Mark M. Deatherage, Michael K. Kennedy, Tom Henze, Gallagher & Kennedy PA, Phoenix, AZ, John Henry Rule, Oliver Sterling Howard, Thomas James Kirby, Gable & Gotwals, Tulsa, OK, for John Gaberino.

Shane Ray Swindle, Brown & Bain PA, Phoenix, AZ, John R. Hannah PLC, Phoenix, AZ, J. Daniel Campbell, III, Daniel J. O'Connor, Zahnie L. Soe Myint, Jason Edward Hunter, Bell O'Connor & Campbell, Phoenix, AZ, for Jack D. Rose.

Mark M. Deatherage, Michael K. Kennedy, Tom Henze, Gallagher & Kennedy PA, Phoenix, AZ, Lawrence A. Hammond, John Alan Stookey, Osborn Maledon PA, Phoenix, AZ, John Henry Rule, Oliver Sterling Howard,

Thomas James Kirby, Gable & Gotwals, Tulsa, OK, for Eugene N. Dubay.

## AMENDED ORDER

SILVER, District Judge.

At the November 28, 2001 hearing on the parties' *Daubert* motions, the Court ordered the parties to meet and confer regarding all outstanding discovery issues and to file status reports by December 17, 2001 identifying all remaining unresolved discovery issues. As set forth in those status reports, there are four discovery matters fully briefed and pending before the Court, which are addressed in turn and resolved by this Order.[1]

I. **Southern Union Company's [Appeal from] Special Master's May 29, 2001 Order re: Southern Union's Motion to Compel Production of Documents and Testimony from Tiffany & Bosco LLP and Mark Dioguardi Over Claims of Privilege Asserted on Behalf of ONEOK and Jack Rose**

Southern Union filed a Motion to Compel Production of Documents and Testimony from Tiffany & Bosco LLP and Mark Dioguardi Over Claims of Privilege Asserted on Behalf of ONEOK and Jack Rose ("Motion to Compel") (Doc. # 231) on April 4, 2000. Rose filed a Response (Doc. # 245) as did Dioguardi and Tiffany & Bosco LLP (Doc. # 253), Dioguardi's law firm. On October 24, 2000, Rose filed a Motion for an Evidentiary Hearing on the Motion to Compel. Southern Union then subpoenaed Dioguardi and Rose to testify at the hearing. Dioguardi and Rose responded by filing on May 3 and 9, 2001 Defendant Dioguardi's Motion to Quash Subpoena (Doc. # 857) and Motion to Quash Subpoena of Defendant Rose; Alternatively, Motion For Protective Order and Motion in Limine (Doc. # 871). Southern Union filed supplemental exhibits (Doc. # 881) in support of its Motion to Compel, and a hearing before the Special Master was held on May 11, 2001.

The Special Master issued an Order ruling on the Motion to Compel on May 29, 2001 (Doc. # 922), from which Southern Union appealed (Doc. # 970) on June 12, 2001.

In its Appeal, Southern Union stated two objections to the Special Master's decision, that is, the rulings (1) denying Southern Union's Motion to Compel production of Document No. MDD00118 ("MDD00118") containing the handwritten notes of Mark Dioguardi concerning a conversation he had with Rose in January or February 1999,[2] and (2) denying Southern Union's Motion to Compel production from ONEOK, Dioguardi, and Tiffany & Bosco of the ghostwritten letter sent by James Irvin to the Southwest Board of Directors, as well as prior drafts of the letter. Responses in opposition to Southern Union's objections were filed by Dioguardi (Doc. # 1015), Rose (Doc. # 1043), and ONEOK (Doc. # 1157), followed by Southern Union's Replies (Doc. # 1091 & # 1118). The Court held a hearing on Southern Union's two objections and other discovery disputes on August 2, 2001, followed by an *in camera* hearing with Rose's counsel on August 14, 2001. At the *in camera* hearing, Rose's counsel disclosed to the Court MDD00118 in its entirety as well as Document Nos. MDD00119–167. The transcript of this hearing was later unsealed, and on September 21, 2001, Southern Union filed a Response (Doc. # 1371) to the *in camera* disclosures of Rose's counsel. The Court then took Southern Union's Appeal from the Special Master's May 29, 2001 Order under advisement.

A. **Rose's Claim of Privilege Regarding MDD00118**

Rose, Dioguardi, and ONEOK contend that MDD00118 was not produced and that the deposition questions of Mark Dioguardi were not answered because Rose believed he had, and did have as a matter of law, an attorney-client relationship with Mark Dioguardi at the time that Dioguardi and Rose

---

1. The Court will address Southern Union's Motion to Compel Compliance with Judge Silver's Law Enforcement Order and to Compel Compliance with Subpoenas (Doc. # 1489) filed on December 14, 2001 after it is fully briefed.

2. The parties have seemed to focus on only Document No. MDD00118, but it appears that Document No. MDD00119 is in question as well. For the sake of clarity, however, this Order will refer to both documents as "MDD0018."

conversed and Dioguardi prepared notes of their conversation set forth in MDD00118.

Federal Rule of Evidence 501 provides that when a federal court hears a civil action in which state law provides the rule of decision, "the privilege of the witness ... shall be determined in accordance with State law." Fed.R.Evid. 501; *Star Editorial v. U.S. Dist. Ct. C.D. Cal.,* 7 F.3d 856, 859 (9th Cir.1993). The rule of decision on the remaining claims in this case is clearly provided in and governed by California, Arizona, and Oklahoma law. On this issue, the parties have relied on both Arizona and federal law, which because taken from the common law, is generally the same.

■ The Ninth Circuit has set forth the following "essential elements" for invocation of the attorney-client privilege: (1) legal advice is sought; (2) from a professional legal adviser in his or her capacity as such; (3) the communication relates to that purpose; (4) is made in confidence; and (5) by the client. *Admiral Ins. Co. v. U.S. Dist. Ct. D. Ariz.,* 881 F.2d 1486, 1492 (9th Cir.1989) (citing *In re Fischel,* 557 F.2d 209, 211 (9th Cir.1977)). Regarding the question of legal advice, "[a] party seeking to withhold discovery based upon the attorney-client privilege must prove that all of the communications it seeks to protect were made 'primarily for the purpose of generating legal advice.' " *Griffith v. Davis,* 161 F.R.D. 687, 697 (C.D.Cal.1995) (citation omitted); *see also N.C. Elec. Membership Corp. v. Carolina Power & Light Co.,* 110 F.R.D. 511, 514 (1986) ("In order for the privilege to apply, the attorney receiving a communication must be acting as an attorney and not simply as a business advisor.").

■ Whether an attorney-client relationship exists is a question of law, but the decision is dependent on the facts. *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.,* 150 F.R.D. 648, 652 (N.D.Cal.1993); *United States v. Layton,* 855 F.2d 1388, 1406 (9th Cir.1988) (holding that deciding factor is what perspective client, not lawyer, thought). Further, when deciding what constitutes legal advice from an attorney, the court examines whether the potential client reasonably believed that he was consulting an attorney as an attorney and manifested an intention to seek professional legal advice, even if actual employment does not result. *Id.; see also Matter of Wade,* 174 Ariz. 13, 846 P.2d 826, 830 (1993) (assessing reasonableness of client's belief that attorney was acting as client's attorney); *Matter of Pappas,* 159 Ariz. 516, 768 P.2d 1161, 1167 (1988) (finding attorney-client relationship if client's belief was objectively reasonable); *Matter of Spear,* 160 Ariz. 545, 774 P.2d 1335, 1344 (1989) (focusing on client's reasonable belief in assessing whether attorney client relationship existed). Because the application of the privilege does not require formal representation by the attorney, neither the absence of a formal contract of employment nor the payment of fees preclude the attachment of the privilege. A person can communicate with an attorney with the assurance that the communications will be protected so long as the consultation satisfies the necessary elements of the privilege. *See United States v. Munoz,* 233 F.3d 1117, 1128 (9th Cir.2000) (finding that attorney-client relationship did not exist because Munoz offered no evidence that he consulted with attorney for personal legal advice); *United States v. Keplinger,* 776 F.2d 678, 701 (7th Cir.1985) (in absence of relatively clear indication by potential client to attorney that he believed he was being individually represented, no attorney-client relationship can be inferred without some finding that potential client's subjective belief is minimally reasonable). This is a particularly difficult factual finding to make in a joint client context. *See In re Imperial Corp. of Am.,* 167 F.R.D. 447, 451 (S.D.Cal.1995) (attorneys who represented directors of corporation wrote letters to corporate entity that was represented by separate counsel and court found that letters were not protected by attorney-client privilege because (1) their purpose was neither to render nor seek legal advice, but only to request contribution to settlement, (2) corporate entity had separate counsel, (3) corporate entity did not pay fees of the attorneys, and (4) interest of corporation and directors were not the same).

Southern Union claims that it is objectively reasonable to find that Rose never retained Dioguardi because (1) Rose did not pay legal fees, (2) Dioguardi never ran a conflicts

check on Rose, and (3) Dioguardi did not believe that he provided legal advice to Rose. Southern Union emphasizes (1) Rose's failure to submit his own affidavit attesting that he reasonably believed that an attorney-client relationship had been created, and (2) that Rose's belief that Dioguardi was acting as his lawyer was not credible because Rose was working for ACC Commissioner Irvin and Dioguardi was representing ONEOK at the time of the communication reflected in MDD00118. Rose, Dioguardi, and ONEOK contend that an attorney-client relationship existed based on Dioguardi's affidavit setting forth his opinion that (1) Rose contacted him for legal advice, (2) Rose expected Dioguardi to keep the communications confidential, and (3) Dioguardi's explanation that as a consequence of his friendship with Rose, he spoke with him informally without an expectation of payment.

The Court finds that Rose, Dioguardi, and ONEOK have not met their burden of establishing that an attorney-client relationship existed at the time of the communication between Rose and Dioguardi reflected in the notes set forth in MDD00118, nor have the elements of the attorney-client privilege been established for the information contained within the documents. The Dioguardi affidavit provides opinion evidence without sufficient facts in support of his conclusions, whether Federal Rule of Evidence 701 or 702 is applied, and Dioguardi's affidavit is more than faintly inconsistent with his deposition testimony. The Court will allow Rose, Dioguardi, and ONEOK a short hearing to attempt to establish the relationship and that the privilege applies to the content of the documents. Southern Union may cross-examine the witnesses and offer controverting evidence only on the limited issues of whether an attorney-client relationship existed and whether the privilege protects MDD00118.

The Court also finds that Southern Union has not established that the crime-fraud ex-

ception applies. *See United States v. de la Jara*, 973 F.2d 746 (9th Cir.1992) (holding that even where court has access and has reviewed documents in question, proponent of crime-fraud exception still must make threshold prima facie showing before court can *consider* documents *in camera* to assess applicability of crime-fraud exception); *see also United States v. Chen*, 99 F.3d 1495, 1502–04 (9th Cir.1996).[3] It is unclear what crime and/or fraud Southern anticipates that MDD00118 helps establish. Southern Union is reminded that Southern Union's only remaining fraud *claim* is fraud in the inducement against Southwest and Maffie in the First Arizona Action, CV–99–1294. Assuming that Rose, Dioguardi, and ONEOK establish that an attorney-client relationship existed and that the privilege applies to the information contained in MDD00118, the Court will allow Southern Union a limited amount of time at the hearing to establish, if it can, that the crime-fraud exception applies. Opposing parties will be allowed to cross-examine and controvert any evidence offered by Southern Union, but only on the limited issue of whether the crime-fraud exception applies.

**B. ONEOK's, Tiffany & Bosco's, and Dioguardi's Claims of Privilege Regarding the Ghostwritten "Irvin Letter" and Drafts of the Letter**

ONEOK, Tiffany & Bosco, and Dioguardi claim that the Special Master's Order should be upheld because the ghost written letter and drafts of the letter are protected by the attorney-client privilege due to "Dioguardi's role in reviewing and providing comments on draft letters [which] constituted legal advice on behalf of ONEOK." (ONEOK's Resp. at 3). They also argue that (1) the work product doctrine protects the documents because they were prepared in anticipation of litigation, and (2) the crime fraud exception does not apply.

---

**3.** *But see* 1 Paul R. Rice, *Attorney–Client Privilege in the United States* § 8:9, at 79 (2d ed.1999) (criticizing *de la Jara:* "Since the Supreme Court's primary concern in *Zolin* was with 'fishing expeditions' and judges being used as 'unwitting agents' of the opponents of privilege, it makes little sense to require the judge to ignore the content of documents that are already being examined, simply because a preliminary independent showing has not been made. Such an elevation of form over substance is not compelled by the logic of *Zolin,* fairness in the resolution of claims, or the policies underlying the attorney-client privilege.").

Southern Union argues that the documents are not protected by the attorney-client privilege because the client intended to disseminate the information within the documents to the public, and that the privilege, if it existed, was waived. Concomitantly, it is argued that the work product privilege does not apply to the documents because they were not prepared in anticipation of litigation and, again, if the privilege existed, it was waived.

■ The Court agrees with the Special Master that because the drafts contained proposed language and revisions made by Dioguardi regarding the language to be included in the final version to be provided to third parties, they contain communications for the purpose of providing legal advice which satisfies the first three elements of the attorney-client privilege. *See Admiral Ins.,* 881 F.2d at 1492. It is also the burden of the proponent of the privilege, however, to establish all the elements of the attorney-client privilege, including that (4) the communications were made in confidence, and (5) to the client. *See Munoz,* 233 F.3d at 1128. Because the attorney-client privilege is based on the idea of encouraging open communications between the attorney and the client, the confidentiality of the communications must be maintained. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Dowling v. Am. Hawaii Cruises,* 971 F.2d 423, 426 (9th Cir.1992). Accordingly, if the documents containing confidential communications are disclosed to third parties, the privileged status of the communications within the documents is lost. *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992) (documents disclosed to auditor lost privilege status); *United States v. Palmer,* 536 F.2d 1278, 1281 (9th Cir.1976) (communications not confidential because third party involved). An exception to waiver of the privilege where disclosures are made to third parties exists if the attorney simultaneously represents two or more clients on the same matter, but there must be a community of interests between the joint clients. *See Griffith v. Davis,* 161 F.R.D. 687, 693 (C.D.Cal. 1995); *Sneider v. Kimberly–Clark Corp.,* 91 F.R.D. 1, 8 (N.D.Ill.1980) (community of interest between joint clients must be based on identical legal issue regarding subject matter of communication which must constitute legal advice, and cannot be commercial in nature); *see also United States v. Zolin,* 809 F.2d 1411, 1417 (9th Cir.1987), *rev'd on other grounds,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

■ The proponents of the attorney-client privilege claim that Dioguardi's role in reviewing and providing comments on the draft letters constituted legal advice on behalf of ONEOK, not Rose. However, the proponents do not dispute that the draft letters were provided to Rose with the knowledge of ONEOK. Therefore, the proponents of the attorney-client privilege have not met their burden of establishing the confidentiality of the communications and cannot defeat the Motion to Compel on this ground. *See Weil v. Investment/Indicators, Research Mgmt., Inc.,* 647 F.2d 18, 25 (9th Cir.1981).

■ The work product doctrine provides a qualified immunity for materials prepared in anticipation of litigation by a party, an attorney, or other representatives of the party. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In an effort to address the inconsistent opinions in federal courts after Hickman, in 1970, the Supreme Court adopted Federal Rule of Civil Procedure 26(b)(3), which provides in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3); see also 1997 Advisory Committee Notes, Rule 26(b)(3).

Pursuant to Fed.R.Civ.P. 26(b)(3), the following conditions must be satisfied by the

proponent in order to establish work product protection: (1) the material must be a document or tangible thing; (2) it must be prepared in anticipation of litigation; and (3) it must be prepared by or for a party, or by or for its representative. See, e.g. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d.Cir.2000). "[T]here is no work product immunity for documents prepared in the ordinary course of business prior to the commencement of litigation." *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 70 (N.D.N.Y.1998).

▬▬ There are two types of work product recognized, ordinary work product and opinion work product. Generally, opinion work product, including the mental impressions, conclusions, opinions, or legal theories of an attorney, is entitled to nearly absolute protection. Holmgren v. State Farm Mutual Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir.1992) (holding that opinion work product is entitled to nearly absolute protection with limited exceptions). Ordinary work product, by contrast, is subject to disclosure upon a showing by the party seeking discovery of substantial need and its inability to obtain the materials by other means. *See Upjohn*, 449 U.S. at 401, 101 S.Ct. 677 (declining to decide whether opinion work product is entitled to absolute protection but recognizing that ordinary work product is discoverable upon a showing of substantial need and inability to obtain materials without undue hardship). The burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion. *See Holmes*, 213 F.3d at 138; *Shiner v. Am. Stock Exch.*, 28 F.R.D. 34, 35 (S.D.N.Y.1961); *Tayler*, 183 F.R.D. at 69.

▬▬ The Court agrees with the proponents of the privilege that it "applies not only to litigation in courts, but litigation before administrative tribunals." *United States v. Am. Telephone & Telegraph Co.*, 86 F.R.D. 603, 627 (D.D.C.1979). An administrative hearing constitutes litigation if there is a right to cross-examine witnesses. *Id.* at 627–28. Further, the Court agrees that the proponents of the privilege established, through

an expert witness, that the proceedings before the Arizona Corporation Commission ("ACC") were anticipated to be adversarial proceedings in which the parties were entitled to introduce evidence and cross-examine witnesses. The proponents of the privilege have also persuaded the Court that at the time the documents in question were drafted, litigation may have been anticipated with Southern Union. What is missing, however, is the nexus between the documents and the anticipated litigation before the ACC and *possibly* with Southern Union. The Court agrees with Southern Union that the documents in question were prepared to be presented to the Southwest Board of Directors, not to the ACC or in court in opposition to Southern Union. Hence, they resemble business documents rather than documents prepared in anticipation of litigation. Thus, the proponents of the privilege have not established that the documents, which were purportedly prepared in anticipation of the proceedings before the ACC, can be protected in this litigation because it is not proceedings before the ACC. *See Leonen v. Johns–Manville*, 135 F.R.D. 94 (D.N.J.1990); *Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 517 (D.N.J.1987).

▬▬ Moreover, the Court finds that because the documents were provided to Rose, any protection afforded by the work product doctrine has been waived. Although the work product doctrine does not treat all voluntary disclosures as a waiver, as is the case for the attorney-client privilege, the proponents of the work product doctrine have not established that providing the documents to Rose was not a waiver of the work product privilege because they shared a common adversary interest. *Am. Telephone & Telegraph*, 642 F.2d at 1299. (stating that when parties have common adversary interest or are conducting joint defense they may share work product); *In re Sunrise Sec. Lit.*, 130 F.R.D. 560, 583 (E.D.Pa.1989) (no waiver occurs when work product is shared not with an adverse party, but with one having common interest).

The Order of the Special Master is rejected with respect to Southern Union's Motion

to Compel the ghost letter and the drafts of the letter.

## II. Southwest Gas Corporation's Notice of Objections to and Appeal from Special Master's Minute Order Granting Southern Union Company's Motion to Compel Production by Southwest Gas Corporation of Draft Proxies & Minutes

On January 8, 2001, Southern Union filed a Motion to Compel Production by Southwest Gas Corporation of Draft Proxies and Minutes (Doc. # 601). After the issue was fully briefed, the Special Master issued a Minute Order on February 23, 2001 (Doc. # 684). After Southwest filed an Appeal (Doc. # 713) from the Minute Order, this Court held a hearing on August 2, 2001 in which the Court ruled that Southwest had ten business days to establish that the privilege applied to each and every document on the privilege log in strict compliance with *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D.Cal.1992).

On August 16, 2001, Southwest filed a Status Report (Doc. # 1312) informing the Court that, the day before, it had produced "the draft board minutes and proxy statements from O'Melveny & Myers" ("OMM") to Southern Union. Southern Union filed a Response (Doc. # 1322) on August 21, 2001 complaining that Southwest still had not complied with *Pancucci* because Southwest had "offered nothing to prove up the privilege on the balance of the documents still at issue." Southwest filed a Reply (Doc. # 1343) on August 31, 2001 contending that Southern Union had "never briefed or argued why the attorney work product protection and attorney-client privilege asserted by Southwest do not protect the 'OMM Legal Work'" and arguing that Southern Union had the burden to establish that privileges did not apply to these documents. Further, Southwest claimed that California law governs the work-product doctrine, that the documents were protected by the work product immunity, and that the Central District of California has the authority to resolve this controversy. On September 24, 2001, Southern Union filed a Supplemental Response (Doc. # 1375) arguing that: (1) the Court has

already ruled that the documents are in the possession of Southwest's counsel; (2) the inadequate descriptions on the privilege log are the reason that Southern Union has not focused on the documents; and (3) the documents are not privileged because Southwest is claiming privilege regarding conversations with third parties.

 If Southwest is attempting to claim privilege regarding third-party conversations, the Court is at a loss to know how these materials are privileged. Moreover, Southwest is again reminded that the burden to establish the applicability of any privilege is on the proponent, and that burden begins with providing an adequate identification of the reasons why the privilege is warranted with respect to each and every communication and each and every document claimed to be protected. Fed.R.Civ.P. 26(b)(5) & 45(d)(2). The Court will not countenance further delay in producing materials that have been requested during discovery. Southwest will have seven days from the date of this Order to produce all materials requested that are not legitimately protected by a privilege. With respect to those materials for which there is a legitimate claim of privilege, Southwest will be again ordered to specifically comply with *Pancucci* within seven days from the date of this Order. If the Court finds that Southwest has not complied with this Order, the Court will impose severe sanctions on Southwest pursuant to Fed. R.Civ.P. 37(a) and (b) and the inherent power of this Court.

## III. Southern Union Company's Motion to Compel Fran Lossing to Appear for Additional Deposition Testimony

On November 1, 2001, Southern Union filed a Motion to Compel Fran Lossing to Appear for Additional Deposition Testimony ("Motion to Compel") (Doc. # 1442). Southwest filed a Response on November 30, 2001 (Doc. # 1485), followed by Southern Union's Reply (Doc. # 1500) on December 20, 2001.

It is impossible for this Court to discern whether the witness improperly wasted time by asking that questions be repeated, but the Court has resolved that it has jurisdiction to manage, supervise, direct, and schedule the

discovery in this case, pursuant to Fed. R.Civ.P. 16, and that Southwest has not established to this Court's satisfaction that Lossing's assertion of the attorney-client privilege to the questions asked was appropriate.

 The issue of waiver is closely tied to the element of confidentiality. Specifically, the proponent must prove that the communication was made in confidence and subsequently maintained as confidential. *See Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 327 (N.D.Cal.1985) (confidentiality and waiver are closely related inasmuch as any voluntary disclosure inconsistent with confidential nature of attorney-client relationship waives privilege). Thus, it has long been held that the proponent of the privilege must establish that it has not been waived. *United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997); *Weil v. Investment/Indicators, Research Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir.1981). Further, the proponent has the obligation of establishing for *each and every* communication all the elements of the privilege. There is no blanket claim of the privilege. *Munoz*, 233 F.3d at 1128.

 Here, there is undisputed evidence that third parties, Merrill Lynch employees, were present during the meeting at which the alleged protected communications took place. Southwest has the obligation to provide sufficient assurance that when the communications were made by Lossing and her clients, third parties were not present. *See United States v. Chevron Corp.*, No. C–94–1885–SBA, 1996 WL 444597 at *4 (N.D.Cal. May 30, 1996) (once opponent has proffered evidence that claimed privilege has been waived, party asserting privilege bears ultimate burden of proving that privilege was not waived). Moreover, the Court is unconvinced that the information requested by counsel for Southern Union during Lossing's deposition called for Lossing to reveal a "communication" by the client or Lossing, or that the answer given by Lossing would reveal a communication of the client seeking legal advice or a communication of a lawyer giving requested legal advice.

Accordingly, the Court will grant the Motion to Compel and permit Southern Union to further depose Lossing, but only for the purpose of again asking the questions which drew no response based on the attorney-client privilege.

## IV. Southwest Gas Corporation's [Appeal from Order] of Special Master re: Production of Documents on Privilege Log of Southwest Gas

For all the reasons set forth in the Special Master's Order (Doc. # 1068), and/or because Southwest has not established that the attorney-client or work product privileges apply to the questioned documents or adequately complied with *Pancucci*, 141 F.R.D. 292 (C.D.Cal.1992), Southwest's Appeal will be denied and the Order of the Special Master affirmed.

**IT IS THEREFORE ORDERED** that the May 29, 2001 Order of the Special Master (Doc. # 922) is **REJECTED** with respect to Southern Union's Motion to Compel the ghost letter and the drafts of the letter.

**IT IS FURTHER ORDERED** that the hearing limited to (1) whether an attorney-client relationship existed in connection with MDD00118, (2) whether the contents of MDD00118 are privileged, and (3) whether the crime-fraud exception applies to MDD00118 is on **January 24, 2002 at 2:00 p.m. FIVE DAYS** before the hearing, counsel shall exchange disclosures of all witnesses and exhibits that counsel intend to present at the hearing. The hearing will last no more than two hours, and the questioning of witnesses will be allocated in accordance with this time limit.

**IT IS FURTHER ORDERED** that Southwest shall produce all materials requested during discovery, including draft proxies and minutes, that are not legitimately protected by a privilege within **SEVEN DAYS** from the date of this Order, and with respect to those materials for which there is a legitimate claim of privilege, Southwest shall specifically comply with *Pancucci* within **SEVEN DAYS** from the date of this Order.

**IT IS FURTHER ORDERED** that Southern Union Company's Motion to Compel Fran Lossing to Appear for Additional Deposition Testimony (Doc. # 1442) is · **GRANT-**

**ED**, but Southern Union may further depose Lossing only for the purpose of re-asking the questions which drew a claim of the attorney-client and work product privileges.

**IT IS FURTHER ORDERED** that Southwest Gas Corporation's [Appeal from Order] of Special Master re: Production of Documents on Privilege Log of Southwest Gas (Doc. # 1233) is **DENIED** and the July 9, 2001 Order of the Special Master (Doc. # 1068) is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Defendant Rose's Motion For Protective Order (Doc. # 871–2) and Motion in Limine (Doc. # 871–3) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Southwest Gas Corporation's Motion to Compel Production of Documents (Doc. # 790–1) and Motion for Relief from Protective Order (Doc. # 790–2) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Southern Union Company's Motion to Compel ONEOK to Fully Respond to Southern Union Company's First Request for Production of Documents and First Interrogatories (Doc. # 928) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the August 6, 2001 Report & Recommendation of the Special Master (Doc. # 1254) is **ADOPTED**.

Original Order signed January 11, 2002